**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| Nelson Gamache and Edward Nofi, individually and on behalf of a class of all others similarly situated, | |
| Plaintiffs, | Case No. _____ |
| v. | **CLASS ACTION COMPLAINT** |
| John F. Hogue, Jr. and Graham Thompson, the Administrative Committee of the Technical Associates of Georgia, Inc. Employee Stock Ownership Plan, and John Does 1-20, | |
| Defendants, | |
| and | |
| Technical Associates of Georgia, Inc. Employee Stock Ownership Plan, | |
| Nominal Defendant. | |

Plaintiffs Nelson Gamache and Edward Nofi, by and through their attorneys, allege as follows:

**NATURE OF THE CASE**

1.      This action is brought pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq., by Plaintiffs on behalf of a class of participants in and beneficiaries of the Technical Associates of Georgia, Inc. Employee Stock Ownership Plan ("the ESOP" or "the Plan") to restore losses to the Plan and to remedy violations of ERISA arising out of the Trustees' self-dealing transactions whereby they gained ownership interests in Technical Associates of Georgia, Inc. at the expense of the ESOP and its participants.

Plaintiffs are former, long-serving employees of Technical Associates of Georgia, Inc. ("Technical Associates" or "the Company") and current participants in the ESOP whose ESOP accounts had significant investments in Technical Associates stock.

2.       Prior to October 2011, the ESOP owned 100% of Technical Associates. In October 2011, Technical Associates and the ESOP refinanced their debt to the original shareholders of the Company ("the 2011 Refinancing"). In connection with and sometime after the 2011 Refinancing, the Trustees of the ESOP – who also were the lead executives of Technical Associates – secretly obtained a significant ownership interest in Technical Associates and thereby diluted the ESOP's ownership interest, and then concealed the dilution of the ESOP's interest.

3.       The ESOP fiduciaries have never disclosed in the ESOP's filings with the U.S. Department of Labor that the ESOP no longer owns 100% of the stock of Technical Associates. No fiduciary of the ESOP disclosed in writing to any participant that the Trustees had acquired partial ownership of Technical Associates or the ESOP no longer owned 100% of the stock of Technical Associates until May 2018.  In an in-person meeting in September 2016, Plaintiff Gamache questioned Defendant Thompson about the financial statements in the ESOP's Form 5500 filings and Defendant Thompson revealed —for the first time—that the ESOP did not own 100% of the Company.  Thereafter, in a May 23, 2018 letter responding to a specific inquiry by Plaintiff Gamache, legal counsel for the Company and the Board of Directors admitted that the ESOP no longer owned 100% of the Company because lead executives of the Company had acquired shares. After the ESOP fiduciaries refused to provide any additional information or take any corrective action, Plaintiffs filed this action.

4.      Through this action, Plaintiffs seek to enforce their rights under ERISA and the Plan, to recover the losses incurred by the Plan and/or the improper profits realized by Defendants as a result of their breaches of fiduciary duty and prohibited transactions. Plaintiffs request that these prohibited transactions be declared void, that Defendants be ordered to disgorge any profits, and that Defendants and any other fiduciaries be required to restore any losses to the Plan arising from their ERISA violations and that any monies recovered for the Plan be allocated to the accounts of the Class.

## JURISDICTION & VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title 1 of ERISA.

6.      This Court has personal jurisdiction over Defendants because Defendants transact business in and have significant contacts with this District, and because ERISA provides for nationwide service of process pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

7.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the ESOP is and was at the relevant times administered in this District, the breaches and violations giving rise to Plaintiffs' claims occurred in this District, and all of the Defendants may be found in this District. Venue is also proper under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and one or more of the Defendants reside in this District.

## PARTIES

**Plaintiffs**

8.      Plaintiff Nelson Gamache is a former employee of Technical Associates.  Mr. Gamache was employed by Technical Associates from February 2001 to June 1, 2018**.**  By October 2011, Mr. Gamache was a vested participant in the Plan. Mr. Gamache remains a participant of the ESOP within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), because he still has an account in the Plan and because he has a colorable claim for additional benefits as a result of Defendants' breaches and violations. He currently resides in Woodstock, Georgia

9.      Plaintiff Edward Nofi is a former employee of Technical Associates. Mr. Nofi was employed by Technical Associates from June 1987 to July 2013**.**   By October 2011, Mr. Nofi was a vested participant in the Plan. Mr. Nofi is a participant of the ESOP within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), because he has a colorable claim for additional benefits as a result of Defendants' fiduciary breaches and violations. He currently resides in The Villages, Florida.

**Defendants**

10.      Defendant John F. Hogue, Jr. is the CEO and President of Operations of Technical Associates. According to his LinkedIn profile, Hogue has been the President of Technical Associates from January 2005 to the present.  According to annual statements filed with the Georgia Secretary of State, Hogue was CEO of Technical Associates from at least April 1, 2010 to the present.  Based on the Technical Associates of Georgia, Inc. Employee Stock Ownership Trust Agreement ("Trust Agreement") dated January 16, 2013, Hogue also is and has been a Trustee of the ESOP.  As one of the Trustees of the ESOP, Hogue is a fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21).  Based on a Director Consent

4

of the Board of Directors of the Company dated August 16, 2006, Hogue is and has been a member of the Technical Associates Board of Directors. Because the Board of Directors has the power to appoint and remove the Trustees of the ESOP, Defendant Hogue is a fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21). Based on an undated resolution of the ESOP Administrative Committee bearing the notation "[f]or the year 2009," Defendant Hogue is and has been a member of the Administrative Committee since 2009. Because the Committee is the Plan Administrator, Defendant Hogue is also a fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21). As an officer of Technical Associates, Defendant Hogue is and has been since at least April 2010 a "party-in-interest" within the meaning of ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H).  As a fiduciary of the ESOP, Defendant Hogue is and has been a "party-in-interest" within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

11.     Defendant Graham Thompson is the CFO and President of Engineering of Technical Associates. According to annual statements filed with the Georgia Secretary of State, Thompson has been CFO of Technical Associates from at least April 1, 2010 to the present. Based on the Trust Agreement, Thompson also is and has been a Trustee of the ESOP. As one of the Trustees of the ESOP, Hogue is a fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21).  Based on a Director Consent of the Board of Directors of the Company dated August 16, 2006, Thompson is and has been a member of the Technical Associates Board of Directors. Because the Board of Directors has the power to appoint and remove the Trustees of the ESOP, Defendant Thompson is a fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21). Based on his signing the IRS Form 5550s on behalf of the ESOP's Administrative Committee every year since 2009 and on an undated

resolution of the ESOP Administrative Committee bearing the notation "[f]or the year 2009," Defendant Thompson is and has been a member of the Administrative Committee.  Because the Committee is the Plan Administrator, Defendant Thompson is also a fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21). As an officer of Technical Associates, Defendant Thompson is and has been since April 2010 or earlier a "party-in-interest" within the meaning of ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H).  As a fiduciary of the ESOP, Defendant Thompson is and has been a "party-in-interest" within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

12.    Defendants John Does 1-10 are the persons serving on the Administrative Committee of the ESOP (the "Committee") from the date that Hogue and Thompson acquired an ownership interest in Technical Associates to the present, whose identities are unknown to Plaintiffs. Even though the Plan requires the Company to identify the members of the Committee, none of the disclosures provided to Plaintiffs, or upon information and belief to other participants, identifies the members of the Committee. Once their identities are ascertained, Plaintiffs will substitute their names.

13.    Defendants John Does 11-20 are persons serving on the Board of Directors from the date that Hogue and Thompson acquired an ownership interest in Technical Associates to the present, whose identities are unknown to Plaintiffs. None of the disclosures provided to Plaintiffs names the members of the Board of Directors, and Plaintiffs have been unable to locate any public filing that discloses the identities of the Board of Directors.  Once their identities are ascertained, Plaintiffs will substitute their names.

14.    The "Committee Defendants" refers collectively to the Committee itself, to Defendants Hogue and Thompson, and to the other individual members of the Committee

between the date on which Hogue and Thompson received shares of Technical Associates stock and the present. As the Committee is the Plan Administrator according to the Section 8.2 of the Plan Document, the Committee Defendants are fiduciaries of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21).

15.     The "Director Defendants" refers to Defendants Hogue and Thompson and the other unknown members of the Board of Directors between the date on which Hogue and Thompson received shares of Technical Associates stock and the present. As the Board of Directors has the power to appoint and remove the Trustees of the ESOP, the Director Defendants are fiduciaries of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21).

**Nominal Defendant**

16.     The Technical Associates of Georgia, Inc. Employee Stock Ownership Plan (the "ESOP") is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  The ESOP purports to be a "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34) and an employee stock ownership plan under ERISA § 407(d)(6), that was intended to meet the requirements of Section 4975(e)(7) of the Internal Revenue Code (the "Code") and IRS Regulations § 54.4975-11. The written instrument by which the Plan is maintained within the meaning of ERISA § 402, 29 U.S.C. § 1102, (colloquially referred to as the "Plan Document") is the "Technical Associates of Georgia, Inc. Employee Stock Ownership Plan as Amended and Restated Generally Effective as of January 1, 2013" (the "2013 Plan Document"). According to the 2013 Plan Document, there was a prior Plan Document which the Plan Administrator has declined to provide; however, the relevant provisions are believed to be substantially similar to the 2013 Plan Document. The ESOP is

7

named as a nominal defendant pursuant to Federal Rule of Civil Procedure 19 to ensure that

complete relief can be granted as to claims brought on behalf of the ESOP.

## CLASS ALLEGATIONS

17.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following Class:

> Participants in the Technical Associates ESOP on or after the date stock was
>
> issued to Defendants Hogue and Thompson in connection with the 2011
>
> Refinancing who vested under the terms of the Plan (or ERISA) and those
>
> participants' beneficiaries.

Excluded from the Class are Defendants and their immediate families, any other fiduciary of the

Plan and his or her immediate family; the officers and directors of Technical Associates and their

immediate family, and legal representatives, successors, and assigns of any such excluded

persons.

**Impracticality of Joinder**.

18.     The members of the Class are so numerous that joinder of all members is

impracticable. According to the Form 5500 that Technical Associates filed with the Department

of Labor for the year ending December 31, 2011, the ESOP had 245 participants at the beginning

of the plan year and 332 participants at the end of the plan year. According to the Form 5500 that

Technical Associates filed with the Department of Labor for the year ending December 31, 2017,

which is the most recent Form 5500 available, the ESOP had 392 participants at the beginning of

the plan year and 353 participants at the end of the plan year. Most, if not all, of the ESOP

participants likely had at least one beneficiary because every married participant had at least one

beneficiary (i.e. a spouse) and some participants likely designated more than one beneficiary. As such, the class consists of at least several hundred persons.

19.     Additionally, the website of Technical Associates identifies the following corporate locations: Albany, Georgia; Atlanta, Georgia; Jacksonville, Florida; Alexandria, Louisiana; Columbus, Ohio; Cleveland, Tennessee; and Jackson, Tennessee.  Accordingly, the participants of the ESOP are likely located in these locations.  Joinder is impracticable because Class members are geographically dispersed.

**Commonality**:

20.     The issues of liability are common to all members of the Class and are capable of common answers as those issues primarily focus on Defendants' acts. The common issues include whether Defendants breached fiduciary duties to the ESOP, whether Defendants engaged in prohibited transactions, and the appropriate relief for Defendants' violations of ERISA.

**Typicality**:

21.     Plaintiffs' claims are typical of the claims of other members of the Class because their claims arise from the same event, practice and/or course of conduct. Specifically, Plaintiffs, on behalf of the Class, alleged that Defendants engaged in prohibited transactions and breaches of fiduciary duty in connection with the 2011 Refinancing.

22.     Plaintiffs' claims are also typical of the claims of other members of the Class because the relief sought consists of requiring Defendants to make the Plan whole for any losses caused by their fiduciary breaches and to disgorge their profits to the Plan.  Any such recovery from Defendants will be paid to the Plan and any relief will flow to all Class Members through their accounts in the Plan.

**Adequacy**

23.     Plaintiffs will fairly and adequately represent and protect the interests of the Class.

24.     Plaintiffs do not have any interests antagonistic to or in conflict with those of the Class.

25.     Defendants have no unique defenses against Plaintiffs that would interfere with Plaintiffs' representation of the Class.

26.     Plaintiffs are represented by counsel with extensive experience prosecuting ERISA class actions and with particular experience and expertise in ESOP litigation.

**Rule 23(b)(1)**

27.     The requirements of Fed. R. Civ. P. 23(b)(1)(A) are satisfied. Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the Plan and its participants. This action challenges whether Defendants acted consistently with their obligations under ERISA as to the Technical Associates ESOP as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan.

28.     The requirements of Fed. R. Civ. P. 23(b)(1)(B) are also satisfied. Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants engaged in prohibited transactions with respect to the Plan and fulfilled their fiduciary obligations to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the Technical Associates ESOP even if they are not parties to

this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

**Rule 23(b)(2)**

29.     The requirements of Fed. R. Civ. P. 23(b)(2) are satisfied as to the Class because Defendants have acted and/or failed to act on grounds generally applicable to the Class, making declaratory and injunctive appropriate with respect to the Class as a whole. This action challenges whether Defendants engaged in prohibited transactions, which would be violations of ERISA as to the ESOP as a whole and as to the Class as a whole. The relief sought in this case primarily consists of declarations that Defendants engaged in prohibited transactions or breached their fiduciary duties. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief that would either flow directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

**Rule 23(b)(3)**

30.     The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied.  The common questions of law and fact concern whether Defendants engaged in prohibited transactions or breached their fiduciary duties to the ESOP.  As the members of the Class were participants in that Plan, their accounts were affected by those breaches and violations.  Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class.  As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

31.     A class action is a superior method to other available methods for the fair and efficient adjudication of this action.  As the claims generally are brought on behalf of the Plan,

resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings and each of those individual proceedings could seek recovery for the entire Plan.  Class certification is a superior method of proceeding because it will obviate the need for unduly duplicative litigation which might result inconsistent judgments about Defendants' duties with regard to the ESOP.

32.     The following factors set forth in Rule 23(b)(3) also support certification:

a.     The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

b.     No other litigation concerning this controversy has been filed by any other members of the Class.

c.     This District is the most desirable location for concentrating this litigation because (i) Technical Associates is located in this District; (ii) the Technical Associates ESOP is administered in this District; (iii) Defendants Hogue and Thompson are located in this District; (iv) a significant number if not the majority of the Class members are located in this District, and (v) a number of the witnesses, including a number of relevant non-party witnesses, are expected to be located in this District.

d.     There are no anticipated difficulties in managing this case as a class action.

**FACTUAL ALLEGATIONS**

33.     Technical Associates of Georgia, Inc. is a Georgia corporation, formed in 1980. According its Articles of Incorporation dated September 20, 1980, Technical Associates was

organized for the purpose of, among other things, providing "contract technical and maintenance services for industry and industrial support related companies," and its initial board of directors consisted of Randall E. Wages and Stephen H. Harrison.

34.     According to Section 1.2 of the Plan Document, the Plan was originally established effective January 1, 2006.  According to correspondence from James H. Moore, III, counsel for Technical Associates and its Board of Directors, to Plaintiff Nelson Gamache dated May 23, 2018 (the "May 23, 2018 Letter"), the ESOP "was established in August 2006 as a method by which the ownership interests in the Company of the [selling shareholders] … could be purchased, after which time they retired from active involvement in the Company's day to day operations and their responsibilities were assumed by co-lead executives, John Hogue and Graham Thompson."

**The Fiduciaries of the ESOP**

35.     According to Section 1.4 of the Plan Document, the ESOP is administered by an Administrative Committee.  According to Section 8.2 of the Plan Document, the Committee is appointed by the Board of Directors and performs the day-to-day administration of the Plan. Section 8.2 of the Plan Document provides that "the Company will notify … the Participants of the Committee's membership."  Despite that provision, Plaintiffs are unaware of receiving any such notification about the membership of the Committee.  The Summary Plan Description ("SPD") which is distributed to participants affirmatively states that the "Board of Directors has appointed the Administrative Committee" to act on behalf of the Company in performing administrative duties with respect to the Plan, but does not identify the members of the Committee.  Based on Thompson signing the Form 5550s on behalf of the Administrative

Committee every year since 2009, Defendant Thompson is a member of the Administrative Committee.

36.     According to Section 1.5 of the Plan Document, funds contributed to the Plan are held and invested in a trust by one or more Trustees appointed by Technical Associates and in accordance with the terms of one or more trust agreements. According to Section 2.3 of the Trust Agreement, the powers, rights, and duties of the Trustees include to receive and hold plan contributions, to vote any stocks held by the Plan, and to perform any and all acts necessary or appropriate for the proper management, investment and distribution of the Trust. Based on the Trust Agreement, Defendants Hogue and Thompson are the Trustees of the ESOP.

37.     According to Section 8.2 of the Plan Document, the Board of Directors of Technical Associates is responsible for appointing the Administrative Committee. According to the recitals to the Trust Agreement, the Board of Directors of Technical Associates is responsible for appointing the Trustees of the ESOP. On information and belief, both Defendant Hogue and Defendant Thompson are members of the Board of Directors of Technical Associates.

**The ESOP's Purchase of Company Stock**

38.     Based on the ESOP's 2009 through 2014 Form 5500 filings—which are annual reports and financial statements for employee benefit plans filed under penalty of perjury by the Plan Administrator with the Department of Labor and the Department of the Treasury, but are *not distributed to plan participants unless specifically requested in writing by a specific participant*—the ESOP purchased all the outstanding stock of the Company from Randall Wages and Stephen Harrison (the "Selling Shareholders") in 2006. The Form 5500s for the Technical Associates ESOP were not provided to the ESOP participants unless a participant made a specific request for them.  Based on those Form 5500s, the ESOP made this purchase using a

14

cash contribution from the Company in the amount of $1.5 million and term loans from the Selling Shareholders in the amount of $16.0 million.

39.     From the 2006 purchase of Technical Associates until sometime after the 2011 Refinancing, the ESOP owned 100% of the outstanding shares of the Company.  In the September 2016 meeting between Plaintiff Gamache and Defendant Thompson, Thompson revealed for the first time to Plaintiff Gamache that the ESOP no longer owned 100% of the Company. This was the first known disclosure by any ESOP fiduciary to any ESOP participant (other than Defendants themselves) that the ESOP had ceased to own 100% of the shares of Technical Associates. In the May 23, 2018 Letter, the Board disclosed to Plaintiff Gamache that the ESOP had ceased to own 100% of the stock of Technical Associates as part of a refinancing that occurred in 2011, the first known written disclosure of that fact to any ESOP participant.

**The 2011 Refinancing of the ESOP Loan**

40.     According to the ESOP's Form 5500 filings, all the outstanding debt to the Selling Shareholders was refinanced in 2011. The Company entered into a debt agreement with Atlantic Capital Bank and entered into a note payable with the Plan in the amount of the previous balance owed to the Selling Shareholders. The Plan used the proceeds of the loan to repay the Selling Shareholders.

41.     In the May 23, 2018 Letter, the Board of Directors stated that "[i]n 2011 the Company and" an unknown and undisclosed ESOP Trustee "determined to refinance the debt related to the initial transaction, among other reasons, to obtain a more favorable interest rate."

42.     In the May 23, 2018 Letter, the Board of Directors also disclosed that in connection with the 2011 Refinancing, "additional stock was made available to key executives."

43.     Based on the statement by the Board of Directors in the May 23, 2018 Letter that the stock was provided to "key executives," and the statement in that letter that Hogue and Thompson were the "co-lead executives," the key executives who received stock as part of or sometime after the 2011 Refinancing were Defendants Hogue and Thompson.

44.     According to the May 23, 2018 Letter, the total number of authorized shares was increased because the number of authorized shares was "insufficient to allow stock to be issued as necessary in connection with the 2011 financing."  Consistent with that statement, on August 22, 2011, Mr. Hogue signed and filed the Company's amended Articles of Incorporation to provide authority for the Company to issue up to 300,000 shares of common stock.

45.     In the May 23, 2018 Letter, the Company and the Board of Directors refused to state the precise percentage interest of the ESOP in 2018, but only would state that the "ESOP continues to own a majority of the outstanding stock in the Company."  Based on the statement by Defendant Thompson in September 2016, following the 2011 Refinancing the collective interest of Defendants Hogue and Thompson in Technical Associates amounted to approximately 40% of the Company and had a value of approximately $8 million.

46.     The issue of new common stock to Defendants Hogue and Thompson in connection with or following the 2011 Refinancing diluted the value of the Technical Associates stock held by the ESOP and the value of its participants' interests in the Company.

47.     According to the ESOP's 2012 Form 5500 filing, in December 2012 the Company refinanced its debt to Atlantic Capital Bank with SunTrust Bank.

48.     In 2013, the Company began issuing dividends on its common stock for the first time since 2006, as documented by the ESOP's Form 5500 filings.  Upon information and belief, as shareholders, Defendants Hogue and Thompson also received dividends in 2013 as a result of

their ownership of Technical Associates stock. The payment of dividends in 2013 to Hogue and Thompson has never been disclosed to the participants of the ESOP.

49.     The Company continued to issue dividends through at least 2017, as documented by the ESOP's Form 5500 Filings. Upon information and belief, as shareholders, Defendants Hogue and Thompson also received dividends in 2014, 2015, 2016 and 2017 as a result of their ownership of Technical Associates stock. The payment of dividends in 2014 through 2017 to Hogue and Thompson has never been disclosed to the participants of the ESOP.

**Defendants Engaged in Fraud or Concealment to Hide their Acquisition of Stock**

50.     Defendants Hogue and Thompson took affirmative steps to conceal from the ESOP participants that Hogue and Thompson had received Technical Associates stock and that the receipt of this stock would dilute the value of the stock held by the ESOP.

51.     In August 2016, Mr. Gamache and Defendant Thompson met at the Company's Albany office to discuss Mr. Gamache's compensation. During this meeting, Thompson stated to Mr. Gamache that he could learn more about the ESOP by reviewing the Form 5500 filings available from the Department of Labor's website. In September 2016, Mr. Gamache and Defendant Thompson again met at the Company's Albany office. In response to questioning from Mr. Gamache about the substance of the Form 5500 filings and the ESOP's financial statements, Thompson revealed at this meeting—for the first time—that the ESOP did not own 100% of the Company. Rather, Thompson explained, Defendants Thompson and Hogue collectively held a 40% interest in the Company.

52.     After the September 2016 meeting with Defendant Thompson, Mr. Gamache began to undertake an investigation to determine when and how Defendants Thompson and Hogue had come to be part-owners of the Company. Among other things, Mr. Gamache

17

obtained a copy of the Amended Articles of Incorporation that authorized the issuance of additional shares. In addition, Mr. Gamache attempted to and did obtain certain other documents in an effort to ascertain the circumstances surrounding this acquisition of Company stock by Plan fiduciaries and whether this acquisition of stock violated the law.

53.     As part of this investigation, Mr. Gamache reviewed the Form 5500s that were filed with the Department of Labor and other documents that he had been provided as a participant in the ESOP.  Yet, Mr. Gamache was unable to find any document that disclosed that the ESOP owned anything less than 100% of the Company.  Further, until Mr. Gamache informed him that the ESOP did not own 100% of Technical Associates (sometime after the meeting with Thompson), Mr. Nofi was unaware that the ESOP did not own 100% of the Company.

54.     After the 2011 Refinancing, the Form 5500s for 2011 through 2014, which were signed under penalty of perjury by Graham Thompson and filed with the Department of Labor and Department of Treasury, continued to state in Note 6 to the Financial Statements that the ESOP had "purchased all of the outstanding stock of the Company from its two former shareholders." These repeated statements were misleading because nothing in the Form 5500s between 2011 and 2017 (the last of which was filed on October 3, 2018 and is the most recent available Form 5500) disclosed that the ESOP, despite having purchased 100% of the stock of the Company in 2006, owned anything less than 100% of the Company. These repeated statements created the false impression that the ESOP continued to own 100% of the Company.

55.     The 2011 Form 5500, signed under penalty of perjury by Defendant Thompson, affirmatively stated on Part IV Line 4(d) that there were no non-exempt transactions with any party-in-interest.  Additionally, Note 7 of the Financial Statements to the 2011 Form 5500,

entitled "Related Party Transactions," fails to disclose the existence of any acquisition of stock

by any key executives, all of whom would have been parties-in-interest. These statements were

false and/or misleading because the acquisition of stock by Defendants Hogue and Thompson in

connection with the 2011 Refinancing constituted non-exempt transactions with parties-in-

interest, and these statements had the effect of concealing the acquisition of stock by such

parties-in-interest in the 2011 Refinancing.

56.     As employees who spent many years working at Technical Associates who were

employed in 2006 when the ESOP initially purchased shares of the Company, Plaintiffs were

informed around the time of the initial ESOP transaction that the ESOP purchased 100% of

Technical Associates and were subsequently reminded that the ESOP owned 100% of the

Company. Defendants Thompson and Hogue, as well as other management of Technical

Associates, informed Plaintiffs and other participants on multiple occasions over the course of

subsequent years that the Company was "ESOP-owned" or "employee-owned." Defendant

Thompson repeatedly stated to employees in staff meetings that "this is your company" and

"you're the owners." These statements were false and/or misleading after 2011 because

following the 2011 Refinancing and the issuing of additional stock to Defendants Hogue and

Thompson, the Company was only partially owned by the ESOP, while Thompson's statements

created the false impression that the ESOP still owned 100% of the Company.

57.     At a 2014 staff meeting at the Company's Albany office attended by Plaintiff

Gamache, Defendant Thompson was asked about depreciation in the value of the ESOP over the

prior two years. Defendant Thompson described this depreciation as the result of "bank

juggling." This statement was false and/or misleading, because the depreciation in the value of

the ESOP was due, at least in part, to the dilution of its value in connection with Defendants Thompson and Hogue's acquisition of a 40% interest in the Company.

58.     Until the September 2016 meeting between Mr. Gamache and Defendant Thompson, no fiduciary of the ESOP ever informed either Plaintiff that the ESOP ceased to own 100% of the Company.  Until the May 23, 2018 Letter, no fiduciary of the ESOP ever disclosed in writing to either Plaintiff or any other participant (other than Defendants themselves) that the ESOP ceased to own 100% of the Company.

59.     The May 23, 2018 Letter on behalf of the Board of Directors admitted that the fiduciaries of the ESOP, including the ESOP Trustees Hogue and Graham, had never "inform[ed]" "the "ESOP participants" that the ESOP Trustees had acquired and owned Technical Associates stock outside the ESOP (i.e. other than as participants in the ESOP). This decision to conceal changes in the ownership structure of the Company from participants was misleading because participants had previously been told that the ESOP owned 100% of the Company and were consistently told that they remained "the owners" – implicitly, the sole owners – of Technical Associates.  Additionally, the failure to disclose the change in ownership structure was designed to and did conceal the prohibited transactions through which Plan fiduciaries acquired interest in the Company and diluted the value of the ESOP's shares.

60.     As a result of their concealment of this information about their acquisition and ownership of Company stock following the 2011 Refinancing, Defendants Hogue and Thompson were able to hide their ownership and siphon not only ownership but also dividends away from ESOP participants.  Additionally, concealment by Defendants Hogue and Thompson and the Committee Defendants of the fact that Hogue and Thompson had obtained stock ownership in the 2011 Refinancing was done to prevent participants in the ESOP from challenging this

conflicted transaction and prevented Plaintiffs from challenging the transaction shortly after the acquisition.

**Plaintiffs Have Adequately Exhausted Their Administrative Remedies**

61.     On April 16, 2018, Mr. Gamache sent a letter to the Company, via the Board of Directors, raising his concerns that the ESOP Trustees had acquired an ownership interest in the Company to the detriment of the ESOP and its participants and requesting that action be taken to remedy this issue, including by removing the ESOP Trustees.

62.     The Company and its Board of Directors responded to Mr. Gamache by their May 23, 2018 Letter.  In that letter, the Company and the Board took the position that providing stock to the key executives – which, based on statements that Hogue and Thompson were the co-lead executives, included Hogue and Thompson – in connection with the 2011 Refinancing was proper and that there was no requirement to inform the participants that the ESOP no longer owned 100% of the Company.

63.     On May 24, 2018, Mr. Gamache responded by requesting further clarification of the information in the May 23, 2018 Letter.

64.     In response to Mr. Gamache's May 24, 2018 email, counsel for the Company and the Board responded on May 25, 2018 that the Company and "the Board will not be providing [him] with additional information and will not respond further to [his] inquiries."

65.      Based on the Company and Board's refusal to take any action in response to Mr. Gamache's inquiry and the refusal of the Company and the Board to respond to further inquiries by Mr. Gamache, any attempt at further exhaustion of remedies by Mr. Gamache would have been futile.  For similar reasons, had Mr. Nofi or other Class members raised similar questions and made similar requests, the Company and the Board would have responded similarly.  As

such, any attempt at exhaustion by Mr. Nofi and other class members would have also been futile.

66.     Without the cooperation of the Board or the Company, Mr. Gamache continued his investigation, including by filing a Freedom of Information Act request with the Department of Labor on October 1, 2018. The Department of Labor purportedly issued a letter that provided responsive, non-exempt documents on November 5, 2018; however, the documents were not delivered to Mr. Gamache until January 10, 2019.

**COUNT I**
**Prohibited Transactions in Violation of**
**ERISA § 406(b)(1) & (3), 29 U.S.C. § 1106(b)(1) & (3)**
**Against Defendants Hogue and Thompson**

67.     Plaintiffs incorporate and re-allege by reference each of the foregoing paragraphs as if fully set forth herein.

68.     ERISA § 406(b), 29 U.S.C. § 1106(b) provides in relevant part that (1) "a fiduciary with respect to a plan shall not deal with the assets of the plan in his own interest or for his own account" and (3) "a fiduciary with respect to a plan shall not receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

69.     As members of the Board of Directors, as members of the Administrative Committee that served as the Plan Administrator, and as the Trustees of the ESOP, Defendants Hogue and Thompson were both fiduciaries of the Plan at the time of the 2011 Refinancing.

70.     Defendants Hogue and Thompson each acquired Company stock and subsequent payment of dividends as a result of the 2011 Refinancing. By receiving such consideration, Defendants Hogue and Thompson dealt with the assets of the Plan in their own interest and/or for their own account in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

71.     Based on the May 23, 2018 letter, Defendants Hogue and Thompson each received consideration for themselves as part of the 2011 refinancing, which was a transaction involving the assets of the Plan, from a party dealing with the Plan in that transaction.

72.     By acquiring Technical Associates stock as part of or in connection with the 2011 Refinancing, Defendants Hogue and Thompson each received consideration for their personal account from the Company, a party dealing with the Plan in connection with the 2011 Refinancing, a transaction involving the assets of the Plan, in violation of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).

## COUNT II
### Prohibited Transactions in Violation of
### ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D)
### Against Defendants Hogue and Thompson

73.     Plaintiffs incorporate and re-allege by reference each of the foregoing paragraphs as if fully set forth herein.

74.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), provides that "a fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan and a party in interest."

75.     ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A) defines a "party in interest" to include "any fiduciary . . . of such employee benefit plan" as well as "an employer any of whose employees are covered by such plan." As members of the Board of Directors, members of the Committee and/or as Trustees, Defendants Hogue and Thompson were fiduciaries of the ESOP at the time of the 2011 Refinancing and were parties in interest pursuant to ERISA § 3(14)(A).

76.     ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), defines a "party in interest" to include "an employee, officer, director (or an individual having powers or responsibilities similar

to those of officers or directors) of a person described in subparagraph" (C). Subparagraph (C) refers to ERISA § 3(14)(C), 29 U.S.C. § 1002(C), which defines a party in interest to include "an employer any of whose employees are covered by such plan." As officers and/or members of the Board of Directors of Technical Associates at the time of the 2011 Refinancing, Defendants Hogue and Thompson were parties in interest pursuant to ERISA § 3(14)(H).

77.     To the extent that Defendants Hogue and Thompson were the fiduciaries in 2011 that caused the ESOP to enter into the 2011 Refinancing, which included the issue of Company stock to both Defendants, this constituted a transfer and use of the assets of the Plan to and for the benefit of Defendants Hogue and Thompson.  By causing the Plan to enter into the 2011 Refinancing, Hogue and Thompson caused the plan to engage in a prohibited transaction in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

78.     To the extent that another fiduciary caused the ESOP to enter into the 2011 Refinancing, Defendants Hogue and Thompson as parties-in-interest can be held liable for knowing participation in these violations of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  As parties to the transaction, officers of the Company and/or fiduciaries of the ESOP, Defendants Hogue and Thompson knew all of the facts sufficient to know that the 2011 Refinancing constituted a direct or indirect transaction between the ESOP and themselves as parties-in-interest.  As such, Defendants Hogue and Thompson are liable for knowing participation in the 2011 Transaction and appropriate equitable relief can and should be awarded against them regardless of whether they were the fiduciaries who caused the ESOP to engage in the transactions.

**COUNT III**
**Breach of Fiduciary Duty Pursuant to**
**ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1) (A) and (B)**
**And Co-Fiduciary Liability Pursuant to ERISA § 405, 29 U.S.C. § 1105**
**Against the Committee Defendants**

79.     Plaintiffs incorporate and re-allege by reference each of the foregoing paragraphs as if fully set forth herein.

80.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and …. (B) with "care, skill, prudence, and diligence."

81.     ERISA § 405, 29 U.S.C. § 1105, makes a fiduciary of a Plan liable for another fiduciary of the same plan's breach when (2) "by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach;" or (3) "he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

82.     Pursuant to Section 8.5(f) of the Plan Document, the Administrative Committee has the power and duties necessary "to discharge its obligations under the Plan and Trust Agreement, including, but not limited to… to appoint or employ providers of legal services to assist in the administration of the Plan."

83.     As fiduciaries of the ESOP with the powers to bring actions on behalf of the Plan, the members of the Administrative Committee had the ability to bring actions on behalf of the Plan pursuant to ERISA § 502(a)(2) and ERISA § 502(a)(3).

84.     Among the assets of an employee benefit plan under ERISA is a "chose in action" – the right to bring an action to recover a debt, money or a thing – including to institute a lawsuit for a breach of fiduciary duties or other violations. ERISA fiduciaries are prohibited from engaging in transactions under ERISA § 406(a) or 406(b) unless there is an exception or exemption, and a claim can be brought on behalf of the Plan against an ERISA fiduciary who engages in such prohibited transactions. As a result, one of the assets of the Plan was a claim against Hogue and Thompson for engaging in prohibited transactions for their own benefit as set forth in Count I and Count II.  By virtue of the power pursuant to the Plan, the Committee Defendants had the authority to institute the claims set forth in Counts I and II on behalf of the Plan.

85.     Each of the Committee Defendants either knew or through a proper review would have discovered that Defendants Hogue and Thompson engaged in prohibited transactions in violation of ERISA as set out in Count I and Count II and that as a result the Plan was harmed (and either incurred significant losses or was entitled to disgorgement of profits), because each of the Committee Defendants had knowledge of the terms of the 2011 Refinancing, participated in the approval of the same, or through a prudent and loyal investigation in their role as a member of the Administrative Committee would have discovered these self-dealing transactions.

86.     None of the Committee Defendants took any action, including any legal action, or exercised any other authority under the Plan Document or the Trust Agreement, to properly manage this chose in action.

87.     By failing to remedy these prohibited transactions on behalf of the Plan, including by, if necessary, bringing suit against Defendants Hogue and Thompson, the Committee Defendants violated ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A).

26

88.     Because their fiduciary duties included employment of legal advisors, the Committee Defendants failed to comply with ERISA § 404(a)(1) in the administration of their specific responsibilities as fiduciaries, and this failure enabled Defendants, Hogue and Thompson to violate ERISA in their acquisition of Technical Associates stock, their continued ownership of Technical Associates stock and their receipt of dividends from that stock.  By failing to comply with their fiduciary duties, the Committee Defendants are liable under ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(3).

89.     As a result of their positions as executives of Technical Associates, and/or because Section 8.5(b) and (c) of the Plan Document entitled them to information necessary for proper administration of the Plan, the Committee Defendants had or would have had knowledge of ERISA violations by Defendants Hogue and Thompson, specifically that they had received stock in connection with the 2011 Refinancing.  As the Committee Defendants have not taken reasonable efforts to date to remedy these violations, the Committee Defendants are liable pursuant to ERISA § 405(a)(3), 29 § U.SC. 1105(a)(3).

90.     As a result of the Committee Defendants' breaches, the Plan suffered losses and/or Defendants Hogue and Thompson obtained profits that rightfully belong to the ESOP and its participants. Accordingly, the ESOP participants who are members of the Class correspondingly suffered losses to their individual accounts.

### COUNT IV
### Breach of Duty to Monitor Pursuant to
### ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B)
### Against the Director Defendants

91.     Plaintiffs incorporate and re-allege by reference each of the foregoing paragraphs as if fully set forth herein.

27

92.     Pursuant to Section 1.5 of the Plan Document, the recitals of the Trust Document, and Section 6.2 of the Trust Document, the Board of Directors of Technical Associates appointed the Trustees and had the power to remove them. Pursuant to that authority, the Director Defendants had a duty to monitor the Trustees' conduct and to take appropriate action if those fiduciaries were not adequately protecting the interests of the ESOP participants, including removing the Trustees and/or correcting any breaches.

93.     The Director Defendants had knowledge of the terms of the 2011 Refinancing because they participated in and/or had access to the terms of the 2011 Refinancing, and because any reasonable system for monitoring the Trustees would have revealed that Defendants Hogue and Thompson had obtained Technical Associates stock in connection with the 2011 Refinancing.  To the extent that the Director Defendants did not actually know of the facts regarding prohibited transactions by Defendants Hogue and Thompson, the Director Defendants either did not conduct a proper review of the Trustees' performance or had a deficient system of monitoring the Trustees actions at regular intervals.

94.     The Director Defendants knew or, if they had properly exercised their duty to monitor pursuant to prudent monitoring procedures in place, would have known that Defendants Hogue and Thompson engaged in prohibited transactions and caused the ESOP to engage in prohibited transactions in violation of ERISA as set forth in Count I and Count II

95.     The Director Defendants nonetheless took no steps to protect Plan participants or otherwise remedy the violations.

96.     By failing to properly monitor and/or take appropriate action against Defendants Hogue and Thompson, the Director Defendants breached their fiduciary duties under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B).

## ENTITLEMENT TO RELIEF

97.     By virtue of the violations set forth in the foregoing paragraphs, Plaintiffs and the Class are entitled to sue each of the Defendants pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief on behalf of the Plan as provided in ERISA § 409, 29 U.S.C. § 1109, including for recovery of any losses to the Plan, the recovery of any profits resulting from the breaches of fiduciary duty, and such other equitable or remedial relief as the Court may deem appropriate.

98.     By virtue of the violations set forth in the foregoing paragraphs, Plaintiffs and the Class are entitled pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to sue each of the Defendants for any appropriate equitable relief to redress the wrongs described above.

## PRAYER FOR RELIEF

Wherefore Plaintiffs, on behalf of themselves and the Class, pray that judgment be entered against Defendants on all claims, and request that the Court order or award the following relief:

A.     Declare any transaction that constitutes a prohibited transaction void and (1) require Defendants Hogue and Thompson (or any other fiduciary or party-in-interest engaging in these transactions) to disgorge any profits made as a result of such transaction; (2) declare a constructive trust over the proceeds of any such transaction; or (3) order any other appropriate equitable relief, whatever is in the best interest of the Plan.

B.     Require that the proceeds of any recovery for the ESOP be allocated to the accounts of participants in the Plan, other than the Defendants and other individuals excluded from the Class.

C.     Order the removal of Defendants from their positions as fiduciaries of the Technical Associates ESOP and enjoin them from acting as fiduciaries for any employee benefit plan that covers or includes any Technical Associates employees or any members of the Class.

D.     Appoint an Independent Fiduciary to manage the Technical Associates ESOP to be paid for by Defendants.

E.     Order pursuant to ERISA § 206(d)(4) that any amount to be paid to the ESOP accounts of the Class members can be satisfied by using or transferring any breaching fiduciary's ESOP account (or the proceeds of that account) to the extent of that fiduciary's liability.

F.     Require Defendants to pay attorneys' fees and the costs of this action pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), or order the payment of reasonable fees and expenses to Plaintiffs' Counsel on the basis of the common benefit or common fund doctrine (or other applicable law) out of any money or benefit recovered for the Class in this action.

G.     Award pre-judgment and post-judgment interest.

H.     Award any other such relief the Court determines Plaintiffs and the Class are entitled to pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or otherwise.

Dated:  January 29, 2019                    Respectfully submitted


                                            */s/William S. Stone*
                                            William S. Stone
                                            STONE LAW GROUP - TRIAL
                                            LAWYERS, LLC
                                            P.O. Drawer 70
                                            Blakely, GA 39823
                                            Tel: (229) 723-3045
                                            Email: billstone@stonelaw.com

R. Joseph Barton *(pro hac vice to be filed)*
Colin M. Downes *(pro hac vice to be filed)*
BLOCK & LEVITON LLP
1735 20th St., N.W.
Washington, D.C. 20009
Tel: (202) 734-7046
Email: jbarton@blockesq.com
Email: colin@blockesq.com

Daniel Feinberg *(pro hac vice to be filed)*
Nina Wasow *(pro hac vice to be filed)*
FEINBERG, JACKSON, WORTHMAN &
WASOW LLP
2030 Addison St., Ste. 500
Berkeley, CA 94704
Tel: (510)  269-7998
Email: dan@feinbergjackson.com
Email: nina@feinbergjackson.com

*Attorneys for Plaintiffs*