**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| NELSON GAMACHE and EDWARD NOFI, individually and on behalf of a class of all others similarly situated, | |
| Plaintiffs, | Case No. 1:19-CV-00021 |
| v. | **AMENDED CLASS ACTION COMPLAINT** |
| JOHN F. HOGUE, JR., GRAHAM THOMPSON, JAMES URBACH, GLENN KIRBO, RANDY HALL, AND THE ADMINISTRATIVE COMMITTEE OF THE TECHNICAL ASSOCIATES OF GEORGIA, INC. EMPLOYEE STOCK OWNERSHIP PLAN, | |
| Defendants, | |
| and | |
| TECHNICAL ASSOCIATES OF GEORGIA, INC. EMPLOYEE STOCK OWNERSHIP PLAN, | |
| Nominal Defendant. | |

Plaintiffs Nelson Gamache and Edward Nofi, by and through their attorneys, allege as follows:

**NATURE OF THE CASE**

1.    This action is brought pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq., by Plaintiffs on behalf of a class of participants in and beneficiaries of the Technical Associates of Georgia, Inc. Employee Stock Ownership Plan ("the ESOP" or "the Plan") to restore losses to the Plan and to remedy violations

of ERISA arising out of self-dealing transactions whereby corporate insiders who were also ESOP fiduciaries gained ownership interests in Technical Associates of Georgia, Inc. at the expense of the ESOP and its participants. Plaintiffs are former, long-serving employees of Technical Associates of Georgia, Inc. ("Technical Associates" or "the Company") and current participants in the ESOP whose ESOP accounts had significant investments in Technical Associates stock.

2.      Prior to August 2011, the ESOP owned more than 97% of Technical Associates (and initially 100% of Technical Associates). In August 2011, Technical Associates and the fiduciaries of the ESOP arranged to refinance the ESOP's debt to the original shareholders of the Company ("the 2011 Refinancing"). In connection with the 2011 Refinancing, on the date of the 2011 Refinancing and sometime thereafter, fiduciaries of the ESOP – who also were the lead executives of Technical Associates – secretly obtained a significant ownership interest in Technical Associates and thereby diluted the ESOP's ownership interest, and then concealed the dilution of the ESOP's interest.

3.      The ESOP fiduciaries have never disclosed in the ESOP's filings with the U.S. Department of Labor that the ESOP no longer owns 100% of the stock of Technical Associates. No fiduciary of the ESOP disclosed in writing to any participant that the fiduciaries had acquired partial ownership of Technical Associates or the ESOP now owned significantly less than 100% of the stock of Technical Associates until May 2018.  In an in-person meeting in September 2016, Plaintiff Gamache questioned Defendant Thompson about the financial statements in the ESOP's Form 5500 filings and Defendant Thompson revealed —for the first time—that the ESOP did not own 100% of the Company.  Thereafter, in a May 23, 2018 letter responding to a specific inquiry by Plaintiff Gamache, legal counsel for the Company and the Board of Directors

admitted that the ESOP no longer owned 100% of the Company because lead executives of the Company had acquired shares. After the ESOP fiduciaries refused to provide any additional information or take any corrective action, Plaintiffs filed this action.

4.    Through this action, Plaintiffs seek to enforce their rights under ERISA and the Plan, to recover the losses incurred by the Plan and/or the improper profits realized by Defendants as a result of their breaches of fiduciary duty and prohibited transactions. Plaintiffs request that these prohibited transactions be declared void, that Defendants be ordered to disgorge any profits, and that Defendants and any other fiduciaries be required to restore any losses to the Plan arising from their ERISA violations and that any monies recovered for the Plan be allocated to the accounts of the Class.

## JURISDICTION & VENUE

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title 1 of ERISA.

6.    This Court has personal jurisdiction over Defendants because Defendants transact business in and have significant contacts with this District, and because ERISA provides for nationwide service of process pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

7.    Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the ESOP is and was at the relevant times administered in this District, the breaches and violations giving rise to Plaintiffs' claims occurred in this District, and all of the Defendants may be found in this District. Venue is also proper under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and one or more of the Defendants reside in this District.

# PARTIES

**Plaintiffs**

8.      Plaintiff Nelson Gamache is a former employee of Technical Associates.  Mr. Gamache was employed by Technical Associates from February 2001 to June 1, 2018**.**  By October 2011, Mr. Gamache was a vested participant in the Plan. Mr. Gamache remains a participant of the ESOP within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), because he still has an account in the Plan and because he has a colorable claim for additional benefits as a result of Defendants' breaches and violations. He currently resides in Woodstock, Georgia

9.      Plaintiff Edward Nofi is a former employee of Technical Associates. Mr. Nofi was employed by Technical Associates from June 1987 to July 2013**.**   By October 2011, Mr. Nofi was a vested participant in the Plan. Mr. Nofi is a participant of the ESOP within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), because he has a colorable claim for additional benefits as a result of Defendants' fiduciary breaches and violations. He currently resides in The Villages, Florida.

**Defendants**

10.      Defendant John F. Hogue, Jr. is the CEO and President of Operations of Technical Associates. According to his LinkedIn profile, Hogue has been the President of Technical Associates from January 2005 to the present.  According to annual statements filed with the Georgia Secretary of State, Hogue was CEO of Technical Associates from at least April 1, 2010 to the present.  Based on the Technical Associates of Georgia, Inc. Employee Stock Ownership Trust Agreement ("Trust Agreement") dated January 16, 2013, Hogue also is or was a Trustee of the ESOP.  As one of the Trustees of the ESOP, Hogue is a fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21).  Based on a Director Consent of the

4

Board of Directors of the Company dated August 16, 2006, Hogue is and has been a member of the Technical Associates Board of Directors. Because the Board of Directors has the power to appoint and remove the Trustees of the ESOP and appoint the members of the Administrative Committee, Defendant Hogue is a fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21). Based on an undated resolution of the ESOP Administrative Committee bearing the notation "[f]or the year 2009," Defendant Hogue is and has been a member of the Administrative Committee since 2009. Because the Committee is the Plan Administrator, Defendant Hogue is also a fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21). As an officer of Technical Associates, Defendant Hogue is and has been since at least April 2010 a "party-in-interest" within the meaning of ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H). As a fiduciary of the ESOP, Defendant Hogue is and has been a "party-in-interest" within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

11. Defendant Graham Thompson is the CFO and President of Engineering of Technical Associates. According to annual statements filed with the Georgia Secretary of State, Thompson has been CFO of Technical Associates from at least April 1, 2010 to the present. Based on the 2013 Trust Agreement, Thompson also is or was a Trustee of the ESOP. As one of the Trustees of the ESOP, Hogue is a fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21). Based on a Director Consent of the Board of Directors of the Company dated August 16, 2006, Thompson is and has been a member of the Technical Associates Board of Directors. Because the Board of Directors has the power to appoint and remove the Trustees of the ESOP and appoint the members of the Administrative Committee, Defendant Thompson is a fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21). Based on his signing the IRS Form 5550s on behalf of the ESOP's Administrative

Committee every year since 2009 and on an undated resolution of the ESOP Administrative Committee bearing the notation "[f]or the year 2009," Defendant Thompson is and has been a member of the Administrative Committee.  Because the Committee is the Plan Administrator, Defendant Thompson is also a fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21). As an officer of Technical Associates, Defendant Thompson is and has been since April 2010 or earlier a "party-in-interest" within the meaning of ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H).  As a fiduciary of the ESOP, Defendant Thompson is and has been a "party-in-interest" within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

12.     Defendant Glenn Kirbo was a Trustee of the ESOP from the ESOP's inception until at least until June 22, 2011. In addition, Kirbo is and has been a member of the Technical Associates Board of Directors since 2011 or earlier. Because the Board of Directors has the power to appoint and remove the Trustees of the ESOP and appoint the members of the Administrative Committee, Defendant Kirbo is a fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21). Finally, Defendant Kirbo is and has been a member of the Administrative Committee since 2011 or earlier. Because the Committee is the Plan Administrator, Defendant Kirbo is also a fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21). As a fiduciary of the ESOP, Defendant Kirbo is and has been a "party-in-interest" within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

13.     Defendant Randy Hall is and has been a member of the Technical Associates Board of Directors since June 22, 2011. Because the Board of Directors has the power to appoint and remove the Trustees of the ESOP and appoint members of the Administrative Committee, Defendant Hall is a fiduciary of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C §

1002(21). As a fiduciary of the ESOP, Defendant Hall is and has been a "party-in-interest" within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

14.     Defendant James Urbach was the Trustee of the ESOP for purposes of the 2011 Refinancing. The Board of Directors of Technical Associates appointed Urbach as Trustee effective June 22, 2011. Based on a document entitled "Removal of Special Fiduciary Under the Technical Associates of Georgia, Inc. Employee Stock Ownership Trust," Defendant Urbach was also removed as a Special Fiduciary of the ESOP effective June 22, 2011.  Urbach is an attorney who resides in and who purports to maintains a law practice in or around Jacksonville, Florida. A search of the Florida Bar website, however, did not list a James Urbach as licensed to practice law in Florida. As a fiduciary of the ESOP, Defendant Urbach is and has been a "party-in-interest" within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

15.     The "Committee Defendants" refers collectively to the Committee itself and to Defendants Hogue, Thompson, and Kirbo. As the Committee is the Plan Administrator according to the Section 8.2 of the 2013 Plan Document, the Committee Defendants are fiduciaries of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21).

16.     The "Director Defendants" refers to Defendants Hogue, Kirbo, Hall, and Thompson. As the Board of Directors has the power to appoint and remove the Trustees of the ESOP and the members of the Administrative Committee, the Director Defendants are fiduciaries of the ESOP within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21).

**Nominal Defendant**

17.     The Technical Associates of Georgia, Inc. Employee Stock Ownership Plan (the "ESOP") is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  The ESOP purports to be a "defined contribution plan" within the meaning

of ERISA § 3(34), 29 U.S.C. § 1002(34) and an employee stock ownership plan under ERISA § 407(d)(6), that was intended to meet the requirements of Section 4975(e)(7) of the Internal Revenue Code (the "Code") and IRS Regulations § 54.4975-11. The written instrument by which the Plan is currently maintained within the meaning of ERISA § 402, 29 U.S.C. § 1102, (colloquially referred to as the "Plan Document") is the "Technical Associates of Georgia, Inc. Employee Stock Ownership Plan as Amended and Restated Generally Effective as of January 1, 2013" (the "2013 Plan Document"). According to the 2013 Plan Document, there was a prior Plan Document which the Plan Administrator has declined to provide. The only document provided by Defendants that appears to be a written instrument of the Plan consists of a document effective January 1, 2006 ("the 2006 Plan Document"); however, Plaintiffs do not know if there was any other written instrument of the Plan between the 2006 Plan Document and the 2013 Plan Document. The ESOP is named as a nominal defendant pursuant to Federal Rule of Civil Procedure 19 to ensure that complete relief can be granted as to claims brought on behalf of the ESOP.

## CLASS ALLEGATIONS

18.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> Participants in the Technical Associates ESOP on or after the date stock was issued to Defendants Hogue and Thompson in connection with the 2011 Refinancing who vested under the terms of the Plan (or ERISA) and those participants' beneficiaries.

Excluded from the Class are Defendants and their immediate families, any other fiduciary of the Plan and his or her immediate family; the officers and directors of Technical Associates and their

immediate family, and legal representatives, successors, and assigns of any such excluded persons.

**Impracticality of Joinder**.

19.     The members of the Class are so numerous that joinder of all members is impracticable. According to the Form 5500 that Technical Associates filed with the Department of Labor for the year ending December 31, 2011, the ESOP had 245 participants at the beginning of the plan year and 332 participants at the end of the plan year. According to the Form 5500 that Technical Associates filed with the Department of Labor for the year ending December 31, 2017, which is the most recent Form 5500 available, the ESOP had 392 participants at the beginning of the plan year and 353 participants at the end of the plan year. Most, if not all, of the ESOP participants likely had at least one beneficiary because every married participant had at least one beneficiary (i.e. a spouse) and some participants likely designated more than one beneficiary. As such, the class consists of at least several hundred persons.

20.     Additionally, the website of Technical Associates identifies the following corporate locations: Albany, Georgia; Atlanta, Georgia; Jacksonville, Florida; Alexandria, Louisiana; Columbus, Ohio; Cleveland, Tennessee; and Jackson, Tennessee.  Accordingly, the participants of the ESOP are likely located in these locations.  Joinder is impracticable because Class members are geographically dispersed.

**Commonality**:

21.     The issues of liability are common to all members of the Class and are capable of common answers as those issues primarily focus on Defendants' acts. The common issues include whether Defendants breached fiduciary duties to the ESOP, whether Defendants engaged in prohibited transactions, and the appropriate relief for Defendants' violations of ERISA.

**Typicality**:

22.     Plaintiffs' claims are typical of the claims of other members of the Class because their claims arise from the same event, practice and/or course of conduct. Specifically, Plaintiffs, on behalf of the Class, alleged that Defendants engaged in prohibited transactions and breaches of fiduciary duty in connection with the 2011 Refinancing.

23.     Plaintiffs' claims are also typical of the claims of other members of the Class because the relief sought consists of requiring Defendants to make the Plan whole for any losses caused by their fiduciary breaches and to disgorge their profits to the Plan.  Any such recovery from Defendants will be paid to the Plan and any relief will flow to all Class Members through their accounts in the Plan.

**Adequacy:**

24.     Plaintiffs will fairly and adequately represent and protect the interests of the Class.

25.     Plaintiffs do not have any interests antagonistic to or in conflict with those of the Class.

26.     Defendants have no unique defenses against Plaintiffs that would interfere with Plaintiffs' representation of the Class.

27.     Plaintiffs are represented by counsel with extensive experience prosecuting ERISA class actions and with particular experience and expertise in ESOP litigation.

**Rule 23(b)(1)**

28.     The requirements of Fed. R. Civ. P. 23(b)(1)(A) are satisfied. Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the Plan and its participants. This action

challenges whether Defendants acted consistently with their obligations under ERISA as to the Technical Associates ESOP as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan.

29.     The requirements of Fed. R. Civ. P. 23(b)(1)(B) are also satisfied. Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants engaged in prohibited transactions with respect to the Plan and fulfilled their fiduciary obligations to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the Technical Associates ESOP even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

**Rule 23(b)(2)**

30.     The requirements of Fed. R. Civ. P. 23(b)(2) are satisfied as to the Class because Defendants have acted and/or failed to act on grounds generally applicable to the Class, making declaratory and injunctive appropriate with respect to the Class as a whole. This action challenges whether Defendants engaged in prohibited transactions, which would be violations of ERISA as to the ESOP as a whole and as to the Class as a whole. The relief sought in this case primarily consists of declarations that Defendants engaged in prohibited transactions or breached their fiduciary duties. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief that would either flow directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

**Rule 23(b)(3)**

31.     The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied.  The common questions of law and fact concern whether Defendants engaged in prohibited transactions or breached their fiduciary duties to the ESOP.  As the members of the Class were participants in that Plan, their accounts were affected by those breaches and violations.  Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class.  As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

32.     A class action is a superior method to other available methods for the fair and efficient adjudication of this action.  As the claims generally are brought on behalf of the Plan, resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings and each of those individual proceedings could seek recovery for the entire Plan.  Class certification is a superior method of proceeding because it will obviate the need for unduly duplicative litigation which might result inconsistent judgments about Defendants' duties with regard to the ESOP.

33.     The following factors set forth in Rule 23(b)(3) also support certification:

        a.     The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

        b.     No other litigation concerning this controversy has been filed by any other members of the Class.

c.      This District is the most desirable location for concentrating this litigation because (i) Technical Associates is located in this District; (ii) the Technical Associates ESOP is administered in this District; (iii) Defendants Hogue and Thompson are located in this District; (iv) a significant number if not the majority of the Class members are located in this District, and (v) a number of the witnesses, including a number of relevant non-party witnesses, are expected to be located in this District.

d.      There are no anticipated difficulties in managing this case as a class action.

## FACTUAL ALLEGATIONS

34.     Technical Associates of Georgia, Inc. is a Georgia corporation, formed in 1980. According its Articles of Incorporation dated September 20, 1980, Technical Associates was organized for the purpose of, among other things, providing "contract technical and maintenance services for industry and industrial support related companies," and its initial board of directors consisted of Randall E. Wages and Stephen H. Harrison.

35.     According to Section 1.2 of the 2013 Plan Document, the Plan was originally established effective January 1, 2006.  According to correspondence from James H. Moore, III, counsel for Technical Associates and its Board of Directors, to Plaintiff Nelson Gamache dated May 23, 2018 (the "May 23, 2018 Letter"), the ESOP "was established in August 2006 as a method by which the ownership interests in the Company of the [selling shareholders] … could be purchased, after which time they retired from active involvement in the Company's day to day operations and their responsibilities were assumed by co-lead executives, John Hogue and Graham Thompson."

**The Fiduciaries of the ESOP**

36.    According to Section 1.4 of the 2013 Plan Document, the ESOP is administered by an Administrative Committee.  According to Section 8.2 of the 2013 Plan Document, the Committee is appointed by the Board of Directors and performs the day-to-day administration of the Plan.  Section 8.2 of the Plan Document provides that "the Company will notify … the Participants of the Committee's membership."  Despite that provision, Plaintiffs are unaware of receiving any such notification about the membership of the Committee.  The Summary Plan Description ("SPD") which is distributed to participants affirmatively states that the "Board of Directors has appointed the Administrative Committee" to act on behalf of the Company in performing administrative duties with respect to the Plan, but does not identify the members of the Committee.  Based on information from Defendants' counsel, Defendants Hogue, Thompson, and Kirbo have been the members of the Administrative Committee since inception of the ESOP.

37.    According to Section 1.5 of the 2013 Plan Document, funds contributed to the Plan are held and invested in a trust by one or more Trustees appointed by Technical Associates and in accordance with the terms of one or more trust agreements. According to Section 2.3 of the 2013 Trust Agreement, the powers, rights, and duties of the Trustees include to receive and hold plan contributions, to vote any stocks held by the Plan, and to perform any and all acts necessary or appropriate for the proper management, investment and distribution of the Trust. Based on the 2011 Refinancing documents, Defendant Urbach replaced Defendant Kirbo as the Trustee of the ESOP on June 22, 2011. Based on the 2013 Trust Agreement, Defendants Hogue and Thompson were Trustees of the ESOP by no later than January 1, 2013.  Plaintiffs do not know whether any other persons served as Trustees during the period from June 23, 2011 to the present.

14

38.     According to Section 8.2 of the 2013 Plan Document, the Board of Directors of Technical Associates is responsible for appointing the Administrative Committee. According to the recitals to the 2013 Trust Agreement, the Board of Directors of Technical Associates is responsible for appointing the Trustees of the ESOP. Based on information from Defendants' counsel, Defendants Hogue, Thompson, Kirbo and Hall are and have been members of the Board of Directors of Technical Associates since the time of the 2011 Refinancing.

**The ESOP's Purchase of Company Stock**

39.     Based on the ESOP's 2009 through 2014 Form 5500 filings—which are annual reports and financial statements for employee benefit plans filed under penalty of perjury by the Plan Administrator with the Department of Labor and the Department of the Treasury, but are *not distributed to plan participants unless specifically requested in writing by a specific participant*—the ESOP purchased all the outstanding stock of the Company from Randall Wages and Stephen Harrison (the "Selling Shareholders") in 2006. The Form 5500s for the Technical Associates ESOP were not provided to the ESOP participants unless a participant made a specific request for them.

40.     The ESOP made the 2006 purchase using a cash contribution from the Company in the amount of $1.5 million and term loans from the Selling Shareholders in the amount of $16.0 million.

41.     In connection with the 2006 Transaction, Defendants Hogue and Thompson each received grants of Company stock and stock options.  These grants and options vested over time such that, as of year-end 2010, Defendants Hogue and Thompson each owned approximately 1.4% of the outstanding stock of Technical Associates, and the ESOP owned the remaining approximately 97.2% of Company stock.

42.     In the September 2016 meeting between Plaintiff Gamache and Defendant Thompson, Thompson revealed for the first time to Plaintiff Gamache that the ESOP no longer owned 100% of the Company. This was the first known disclosure by any ESOP fiduciary to any ESOP participant (other than Defendants themselves) that the ESOP had ceased to own 100% of the shares of Technical Associates. In the May 23, 2018 Letter, the Board informed Plaintiff Gamache that the ESOP had ceased to own 100% of the stock of Technical Associates as part of a refinancing that occurred in 2011, the first known written disclosure of that fact to any ESOP participant.

**The 2011 Refinancing of the ESOP Loan**

43.     All of the ESOP's outstanding debt to the Selling Shareholders was refinanced through a set of interrelated agreements which together constituted the 2011 Refinancing.

44.     As part of the 2011 Refinancing, the Company borrowed $8 million from Atlantic Capital Bank.  As a condition of the Company obtaining the bank loan as part of the 2011 Refinancing, the Selling Shareholders assigned their ESOP loans to the Company via an Assignment Agreement by and among the Company, the ESOP, and the Selling Shareholders. In the 2011 Refinancing, the Company used the proceeds of the bank loan to repay the Selling Shareholders.

45.     As part of the 2011 Refinancing, the ESOP simultaneously entered into an ESOP Note in favor of the Company in the amount of $7,528,380.

46.     As part of the 2011 Refinancing, Atlantic Capital Bank required the ESOP and the Company to enter into an ESOP Loan and Pledge Agreement, in which the ESOP pledged all shares of Company stock held by the ESOP but not yet allocated to participants ("unallocated

shares") to the Company.  The Company, in turn, pledged all of the ESOP's unallocated shares to Atlantic Capital Bank to secure the loan.

47.     As part of the 2011 Refinancing, Defendants Thompson and Hogue personally guaranteed the loan from Atlantic Capital Bank.  Hogue and Thompson obtained warrants for issuance of stock ("the contingent warrants") from the Company and pledged the contingent warrants to the Company as collateral for the loan.  The combined contingent warrants were sufficient to give Atlantic Capital Bank a 50.1% interest in the outstanding common stock of Technical Associates in the event of default on the loan.  The stock was valued at one cent per share for purposes of the contingent warrants.

48.     Defendants Hogue and Thompson received, as part of and following the 2011 Refinancing, additional grants of Company stock and stock options as well as cash payments. Specifically, Hogue and Thompson each received the option to purchase up to 4,901 shares of common stock of Technical Associates at an exercise price of $68.21 per share, vesting monthly over a five year period, and a "guarantee fee" in the form of a grant of 6,665 shares of common stock of Technical Associates each (plus $335,037 in cash).

49.     In addition, as part of the 2011 Refinancing the Company agreed to issue 12,941 shares of common stock of Technical Associates each to Defendants Hogue and Thompson in exchange for promissory notes in the amount of $882,706 each ($68.21 per share).  These notes provided for forgiveness of principal and interest by the Company on each anniversary of the original issue date as long as Hogue and Thompson remained employees of the Company.

50.     According to the May 23, 2018 Letter, the total number of authorized shares of the Company was increased because the number of authorized shares was "insufficient to allow stock to be issued as necessary in connection with the 2011 financing."  Consistent with that

statement, on August 22, 2011, Mr. Hogue signed and filed the Company's amended Articles of Incorporation to provide authority for the Company to issue up to 300,000 shares of common stock.

51.     As a result of the stock grants to Defendants Hogue and Thompson in connection with the 2011 Refinancing, the ESOP's ownership stake in the Company declined substantially. The stock options Defendants Hogue and Thompson obtained in the 2011 Refinancing vested over time, and based on the statement by Defendant Thompson in September 2016, Hogue and Thompson have exercised some or all of their options available to date.

52.     Based on the statement by Defendant Thompson in September 2016, following the 2011 Refinancing the collective interest of Defendants Hogue and Thompson in Technical Associates amounted to approximately 40% of the Company and had a value of approximately $8 million. As a result, between 2011 and 2016 the ESOP's ownership stake decreased from approximately 97.2% to approximately 60%.

53.     The issue of new common stock to Defendants Hogue and Thompson in connection with or following the 2011 Refinancing diluted the value of the Technical Associates stock held by the ESOP and the value of its participants' interests in the Company.

54.     Defendant Urbach, in his capacity as Trustee of the ESOP, voted the allocated and unallocated shares of the ESOP in favor of the 2011 Refinancing, stating in the Consent Action of Shareholder of Technical Associates of Georgia, Inc. that he "believe[d] it to be in the best interest of the Corporation that the Corporation enter into the ACB Loans."

55.     Willamette Management Associates provided a letter to Defendant Urbach dated August 22, 2011, opining that the 2011 Refinancing (including the stock grants and options and other forms of executive compensation to Defendants Hogue and Thompson) was fair to the

ESOP "from a financial point of view" (the "Fairness Opinion").  This "Fairness Opinion"
described the transaction, but did not contain any financial analysis and did not consider any
actual or potential dilutive impact of the 2011 Refinancing on the value of the ESOP's shares.

56.     Nothing in the Transaction Binder evidences that Defendant Urbach as Trustee
undertook any analysis or consideration of whether the benefits of the 2011 Refinancing to the
ESOP – namely, a reduction of the interest rate on the ESOP's indebtedness – outweighed its
costs, such as the dilution of the ESOP's ownership of the Company and the associated loss of
future dividend payments.  Based on the lack of any such documentation, Defendant Urbach as
Trustee either failed to consider or failed to adequately consider whether the 2011 Refinancing
was in the best interests of the ESOP.

57.     Nothing in the Transaction Binder suggests that the Committee considered
whether the 2011 Refinancing was in the best interests of the ESOP.

58.     According to the ESOP's 2012 Form 5500 filing, in December 2012 the Company
refinanced its debt to Atlantic Capital Bank with SunTrust Bank.

59.     In 2013, the Company began issuing dividends on its common stock for the first
time since 2006, as documented by the ESOP's Form 5500 filings.  Upon information and belief,
as shareholders, Defendants Hogue and Thompson also received dividends in 2013 as a result of
their ownership of Technical Associates stock. The payment of dividends in 2013 to Hogue and
Thompson has never been disclosed to the participants of the ESOP.

60.     The Company continued to issue dividends through at least 2017, as documented
by the ESOP's Form 5500 Filings. Upon information and belief, as shareholders, Defendants
Hogue and Thompson also received dividends in 2014, 2015, 2016 and 2017 as a result of their

ownership of Technical Associates stock.  The payment of dividends in 2014 through 2017 to Hogue and Thompson has never been disclosed to the participants of the ESOP.

**Defendants Engaged in Fraud or Concealment to Hide their Acquisition of Stock**

61.     Defendants Hogue and Thompson took affirmative steps to conceal from the ESOP participants that Hogue and Thompson had received Technical Associates stock and that the receipt of this stock would dilute the value of the stock held by the ESOP.

62.     In August 2016, Mr. Gamache and Defendant Thompson met at the Company's Albany office to discuss Mr. Gamache's compensation. During this meeting, Thompson stated to Mr. Gamache that he could learn more about the ESOP by reviewing the Form 5500 filings available from the Department of Labor's website. In September 2016, Mr. Gamache and Defendant Thompson again met at the Company's Albany office. In response to questioning from Mr. Gamache about the substance of the Form 5500 filings and the ESOP's financial statements, Thompson revealed at this meeting—for the first time—that the ESOP did not own 100% of the Company. Rather, Thompson explained, Defendants Thompson and Hogue collectively held a 40% interest in the Company.

63.     After the September 2016 meeting with Defendant Thompson, Mr. Gamache began to undertake an investigation to determine when and how Defendants Thompson and Hogue had come to be part-owners of the Company.  Among other things, Mr. Gamache obtained a copy of the Amended Articles of Incorporation that authorized the issuance of additional shares. In addition, Mr. Gamache attempted to and did obtain certain other documents in an effort to ascertain the circumstances surrounding this acquisition of Company stock by Plan fiduciaries and whether this acquisition of stock violated the law.

64.     As part of this investigation, Mr. Gamache reviewed the Form 5500s that were filed with the Department of Labor and other documents that he had been provided as a participant in the ESOP.  Yet, Mr. Gamache was unable to find any document that disclosed that the ESOP owned anything less than 100% of the Company.  Further, until Mr. Gamache informed him that the ESOP did not own 100% of Technical Associates (sometime after the meeting with Thompson), Mr. Nofi was unaware that the ESOP did not own 100% of the Company.

65.     After the 2011 Refinancing, the Form 5500s for 2011 through 2014, which were signed under penalty of perjury by Graham Thompson and filed with the Department of Labor and Department of Treasury, continued to state in Note 6 to the Financial Statements that the ESOP had "purchased all of the outstanding stock of the Company from its two former shareholders." These repeated statements were misleading because nothing in the Form 5500s between 2011 and 2017 (the last of which was filed on October 3, 2018 and is the most recent available Form 5500) disclosed that the ESOP, despite having purchased 100% of the stock of the Company in 2006, owned anything less than 100% of the Company. These repeated statements created the false impression that the ESOP continued to own 100% of the Company.

66.     The 2011 Form 5500, signed under penalty of perjury by Defendant Thompson, affirmatively stated on Part IV Line 4(d) that there were no non-exempt transactions with any party-in-interest.  Additionally, Note 7 of the Financial Statements to the 2011 Form 5500, entitled "Related Party Transactions," fails to disclose the existence of any acquisition of stock by any key executives, all of whom would have been parties-in-interest. These statements were false and/or misleading because the acquisition of stock by Defendants Hogue and Thompson in connection with the 2011 Refinancing constituted non-exempt transactions with parties-in-

interest, and these statements had the effect of concealing the acquisition of stock by such parties-in-interest in the 2011 Refinancing.

67.     As employees who spent many years working at Technical Associates who were employed in 2006 when the ESOP initially purchased shares of the Company, Plaintiffs were informed around the time of the initial ESOP transaction that the ESOP purchased 100% of Technical Associates and were subsequently reminded that the ESOP owned 100% of the Company. Defendants Thompson and Hogue, as well as other management of Technical Associates, informed Plaintiffs and other participants on multiple occasions over the course of subsequent years that the Company was "ESOP-owned" or "employee-owned." Defendant Thompson repeatedly stated to employees in staff meetings that "this is your company" and "you're the owners." These statements were false and/or misleading after 2011 because following the 2011 Refinancing and the issuing of additional stock to Defendants Hogue and Thompson, the Company was only partially owned by the ESOP, while Thompson's statements created the false impression that the ESOP still owned 100% of the Company.

68.     At a 2014 staff meeting at the Company's Albany office attended by Plaintiff Gamache, Defendant Thompson was asked about depreciation in the value of the ESOP over the prior two years. Defendant Thompson described this depreciation as the result of "bank juggling." This statement was false and/or misleading, because the depreciation in the value of the ESOP was due, at least in part, to the dilution of its value in connection with Defendants Thompson and Hogue's acquisition of a 40% interest in the Company.

69.     Until the September 2016 meeting between Mr. Gamache and Defendant Thompson, no fiduciary of the ESOP ever informed either Plaintiff that the ESOP ceased to own 100% of the Company.  Until the May 23, 2018 Letter, no fiduciary of the ESOP ever disclosed

in writing to either Plaintiff or any other participant (other than Defendants themselves) that the ESOP ceased to own 100% of the Company. In the May 23, 2018 Letter, the Company and the Board of Directors refused to state the precise percentage interest of the ESOP in 2018, but only would state that the "ESOP continues to own a majority of the outstanding stock in the Company." Despite making some disclosures in the May 23, 2018 Letter, the Board of Directors (which included Hogue and Thompson) continued to conceal critical information about the acquisition of stock by Hogue and Thompson and the percentage of stock owned by the ESOP versus non-ESOP owners.

70.     In the May 23, 2018 Letter, the Board of Directors disclosed that "[i]n 2011 the Company and" an unknown and undisclosed ESOP Trustee "determined to refinance the debt related to the initial transaction, among other reasons, to obtain a more favorable interest rate." In the May 23, 2018 Letter, the Board disclosed that in connection with the 2011 Refinancing, "additional stock was made available to key executives" but did not disclose the "key executives" to whom such stock was "made available."

71.     The May 23, 2018 Letter on behalf of the Board of Directors admitted that the fiduciaries of the ESOP, including the ESOP Trustees Hogue and Graham, had never "inform[ed]" "the "ESOP participants" that the ESOP Trustees had acquired and owned Technical Associates stock outside the ESOP (i.e. other than as participants in the ESOP). This decision to conceal changes in the ownership structure of the Company from participants was misleading because participants had previously been told that the ESOP owned 100% of the Company and were consistently told that they remained "the owners" – implicitly, the sole owners – of Technical Associates. Additionally, the failure to disclose the change in ownership

structure was designed to and did conceal the prohibited transactions through which Plan fiduciaries acquired interest in the Company and diluted the value of the ESOP's shares.

72.     Indeed, the Director Defendants including Hogue and Thompson concealed the details of the 2011 Refinancing, the acquisition of Technical Associates stock by Hogue and Thompson and the percentage ownership of the Company until after Plaintiffs filed this lawsuit and Plaintiffs informed Defendants' counsel that Plaintiffs intended to seek discovery.  Even now, Plaintiffs do not know precisely the amount of shares that Defendants Hogue and Thompson have obtained or the ESOP's percentage ownership of the Company.

73.     As a result of their concealment of this information about their acquisition and ownership of Company stock following the 2011 Refinancing, Defendants Hogue and Thompson were able to hide their ownership and siphon not only ownership but also dividends away from ESOP participants.  Additionally, concealment by Defendants Hogue and Thompson and the Committee Defendants of the fact that Hogue and Thompson had obtained stock ownership in the 2011 Refinancing was done to prevent participants in the ESOP from challenging this conflicted transaction and prevented Plaintiffs from challenging the transaction shortly after the acquisition.

**Plaintiffs Have Adequately Exhausted Their Administrative Remedies**

74.     On April 16, 2018, Mr. Gamache sent a letter to the Company, via the Board of Directors, raising his concerns that the ESOP Trustees had acquired an ownership interest in the Company to the detriment of the ESOP and its participants and requesting that action be taken to remedy this issue, including by removing the ESOP Trustees.

75.     The Company and its Board of Directors responded to Mr. Gamache by their May 23, 2018 Letter.  In that letter, the Company and the Board took the position that providing stock

to the key executives – who are now known to be exclusively Hogue and Thompson – in connection with the 2011 Refinancing was proper and that there was no requirement to inform the participants that the ESOP no longer owned 100% of the Company.

76.    On May 24, 2018, Mr. Gamache responded by requesting further clarification of the information in the May 23, 2018 Letter.

77.    In response to Mr. Gamache's May 24, 2018 email, counsel for the Company and the Board responded on May 25, 2018 that the Company and "the Board will not be providing [him] with additional information and will not respond further to [his] inquiries."

78.     Based on the Company and Board's refusal to take any action in response to Mr. Gamache's inquiry and the refusal of the Company and the Board to respond to further inquiries by Mr. Gamache, any attempt at further exhaustion of remedies by Mr. Gamache would have been futile.  For similar reasons, had Mr. Nofi or other Class members raised similar questions and made similar requests, the Company and the Board would have responded similarly.  As such, any attempt at exhaustion by Mr. Nofi and other class members would have also been futile.

79.    Without the cooperation of the Board or the Company, Mr. Gamache continued his investigation, including by filing a Freedom of Information Act request with the Department of Labor on October 1, 2018. The Department of Labor purportedly issued a letter that provided responsive, non-exempt documents on November 5, 2018; however, the documents were not delivered to Mr. Gamache until January 10, 2019.

**COUNT I**
**Prohibited Transactions in Violation of**
**ERISA § 406(b)(1) & (3), 29 U.S.C. § 1106(b)(1) & (3)**
**Against Defendants Hogue and Thompson**

80.     Plaintiffs incorporate and re-allege by reference each of the foregoing paragraphs as if fully set forth herein.

81.     ERISA § 406(b), 29 U.S.C. § 1106(b) provides in relevant part that (1) "a fiduciary with respect to a plan shall not deal with the assets of the plan in his own interest or for his own account" and (3) "a fiduciary with respect to a plan shall not receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

82.     As members of the Board of Directors and as members of the Administrative Committee that served as the Plan Administrator, Defendants Hogue and Thompson were both fiduciaries of the Plan at the time of the 2011 Refinancing.

83.     The 2011 Refinancing was a transaction involving the assets of the ESOP: the unallocated shares of the ESOP were pledged to the Company as collateral for the bank loan used to refinance the Selling Shareholders' loan to the ESOP.

84.     In the 2011 Refinancing, Defendants Hogue and Thompson each acquired Company stock, the option to purchase Company stock in the future, and cash payments from the Company, as well as subsequent payment of dividends, as a result of the 2011 Refinancing.

85.     By entering into Agreements which formed a part of the 2011 Refinancing, Defendants Hogue and Thompson dealt with the assets of the Plan in their own interest and/or for their own account in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

86.     By acquiring Technical Associates stock as part of and/or in connection with the 2011 Refinancing, the option to purchase Company stock in the future, and cash payments from

the Company, as well as subsequent payment of dividends, Defendants Hogue and Thompson each received consideration for their personal account from the Company, a party dealing with the Plan in connection with the 2011 Refinancing, a transaction involving the assets of the Plan, in violation of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).

**COUNT II**
**Prohibited Transactions in Violation of**
**ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D)**
**Against Defendants Urbach, Hogue and Thompson**

87.     Plaintiffs incorporate and re-allege by reference each of the foregoing paragraphs as if fully set forth herein.

88.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), provides that "a fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan and a party in interest."

89.     As Trustee of the ESOP, Defendant Urbach was the named fiduciary with full authority to approve or disapprove and who did cause the 2011 Refinancing on behalf of the Plan.

90.     ERISA § 3(14), 29 U.S.C. § 1002(14), defines a "party in interest" to include (A) "any fiduciary . . . of such employee benefit plan," (C)"an employer any of whose employees are covered by such plan," and (H) any employee, officer, or director of such employer. As members of the Board of Directors, members of the Committee and/or as Trustees and as employees, directors and officers of Technical Associates, Defendants Hogue and Thompson were parties in interest pursuant to ERISA § 3(14)(A) and (H).

91.     Defendant Urbach caused the ESOP to enter into the 2011 Refinancing, which included the pledging of ESOP shares to the Company and the issue of Company stock to

Defendants Hogue and Thompson.  This constituted a transfer and use of the assets of the Plan to and for the benefit of Defendants Hogue and Thompson.  By causing the Plan to enter into the 2011 Refinancing, Urbach caused the plan to engage in a prohibited transaction in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

92.    Defendants Hogue and Thompson as parties-in-interest can be held liable for knowing participation in these violations of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  As parties to the transaction, officers of the Company and/or fiduciaries of the ESOP, Defendants Hogue and Thompson knew all of the facts sufficient to know that the 2011 Refinancing constituted a direct or indirect transaction between the ESOP and themselves as parties-in-interest.  As such, Defendants Hogue and Thompson are liable for knowing participation in the 2011 Transaction and appropriate equitable relief can and should be awarded against them regardless of whether they were the fiduciaries who caused the ESOP to engage in the transactions.

**COUNT III**
**Breach of Fiduciary Duty Pursuant to**
**ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1) (A) and (B)**
**And Co-Fiduciary Liability Pursuant to ERISA § 405, 29 U.S.C. § 1105**
**Against Defendant Urbach and the Committee Defendants**

93.    Plaintiffs incorporate and re-allege by reference each of the foregoing paragraphs as if fully set forth herein.

94.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and …. (B) with "care, skill, prudence, and diligence."

95.     ERISA § 405, 29 U.S.C. § 1105, makes a fiduciary of a Plan liable for another fiduciary of the same plan's breach when (2) "by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach;" or (3) "he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

96.     Defendant Urbach and the Committee Defendants breached their fiduciary duties with respect to the Plan by failing to adequately consider whether the 2011 Refinancing was in the best interests of the ESOP, failing to consider the dilutive impact of the 2011 Refinancing on the value of the shares held by the ESOP and its participants, failing to consider whether the benefits of the 2011 Refinancing outweighed the costs or negatives to the Plan and participants, and failing to exercise appropriate prudence and diligence by obtaining a thorough, detailed analysis of the 2011 Refinancing from a qualified expert. In addition, Defendant Urbach breached his fiduciary duty when he approved the 2011 Refinancing based on his stated belief that it was in the best interests of the Company (as opposed to the best interests of the ESOP or its participants).

97.     Pursuant to Section 8.5(f) of the 2013 Plan Document, the Administrative Committee has the power and duties necessary "to discharge its obligations under the Plan and Trust Agreement, including, but not limited to… to appoint or employ providers of legal services to assist in the administration of the Plan."

98.     Pursuant to the 2006 Trust Agreement, which appears to have been effective until the adoption of the 2013 Plan Document and the 2013 Trust Agreement, the Trustee had the power pursuant to Section VII(i) of the 2006 Trust Agreement "[t]o settle, compromise or submit

to arbitration, to commence or defend any suits or legal or administrative proceedings arising or necessary or appropriate in connection with the Plan and Trust, and to represent the Plan and Trust in all suits and legal and administrative proceedings."

99.     As fiduciaries of the ESOP with the powers to bring actions on behalf of the Plan, the members of the Administrative Committee had the ability to bring actions on behalf of the Plan pursuant to ERISA § 502(a)(2) and ERISA § 502(a)(3) since at least January 1, 2013 if not before.  To the extent that the members of the members of the Administrative Committee did not have the ability to bring actions on behalf of the Plan pursuant to ERISA § 502(a)(2) and ERISA § 502(a)(3) between 2011 and December 31, 2012, the Trustee of the Plan had the authority to bring actions on behalf of the Plan pursuant to ERISA § 502(a)(2) and ERISA § 502(a)(3).

100.     Among the assets of an employee benefit plan under ERISA is a "chose in action" – the right to bring an action to recover a debt, money or a thing – including to institute a lawsuit for a breach of fiduciary duties or other violations. ERISA fiduciaries are prohibited from engaging in transactions under ERISA § 406(a) or 406(b) unless there is an exception or exemption, and a claim can be brought on behalf of the Plan against an ERISA fiduciary who engages in such prohibited transactions. As a result, one of the assets of the Plan was a claim against Hogue and Thompson for engaging in prohibited transactions for their own benefit as set forth in Count I and Count II.  By virtue of the power pursuant to the Plan, the Committee Defendants and/or the Trustee(s) had the authority to institute the claims set forth in Counts I and II on behalf of the Plan.

101.     Each of the Committee Defendants and Trustee(s) either knew (because they were parties to the transaction) or through a proper review would have discovered that Defendants Hogue and Thompson engaged in prohibited transactions in violation of ERISA as set forth in

Count I and Count II and that Defendant Urbach caused the Plan to engage in the prohibited

transactions described in Count II, and that as a result the Plan was harmed (and either incurred

significant losses or was entitled to disgorgement of profits), because each of the Committee

Defendants and Trustee(s) had knowledge of the terms of the 2011 Refinancing, participated in

the approval of the same, or through a prudent and loyal investigation in their role as a member

of the Administrative Committee and/or a Trustee of the Plan would have discovered these self-

dealing transactions.

102.    None of the Committee Defendants or Trustee(s) took any action, including any

legal action, or exercised any other authority under the 2013 Plan Document or the Trust

Agreement, to properly manage this chose in action.

103.    By failing to remedy these prohibited transactions on behalf of the Plan, including

by, if necessary, bringing suit against Defendants Urbach, Hogue and Thompson, the Committee

Defendants and the Trustee(s) from August 23, 2011 to the present violated ERISA §§

404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A).

104.    Because their fiduciary duties included employment of legal advisors, the

Committee Defendants and the Trustee(s) failed to comply with ERISA § 404(a)(1) in the

administration of their specific responsibilities as fiduciaries, and this failure enabled Defendants

Hogue and Thompson to violate ERISA in their acquisition of Technical Associates stock, their

continued ownership of Technical Associates stock and their receipt of dividends from that

stock.  By failing to comply with their fiduciary duties, the Committee Defendants and the

Trustee(s) are liable under ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(3).

105.    As a result of their positions as executives of Technical Associates, and/or

because Section 8.5(b) and (c) of the 2013 Plan Document entitled them to information

necessary for proper administration of the Plan, the Committee Defendants had or would have had knowledge of ERISA violations by Defendants Hogue and Thompson, specifically that they had received stock in connection with the 2011 Refinancing.  As the Committee Defendants have not taken reasonable efforts to date to remedy these violations, the Committee Defendants are liable pursuant to ERISA § 405(a)(3), 29 § U.SC. 1105(a)(3).

106.    As the Trustee for the 2011 Refinancing, Defendant Urbach had or would have had knowledge of ERISA violations by Defendants Hogue and Thompson, specifically that they had received consideration for their personal accounts in connection with the 2011 Refinancing. As Defendant Urbach did not take reasonable efforts to date to remedy these violations, Defendant Urbach is liable pursuant to ERISA § 405(a)(3), 29 § U.SC. 1105(a)(3), along with any other person(s) who served as Trustee between August 23, 2011 and the present.

107.    As a result of these breaches by the Committee Defendants and the Trustee(s), the Plan suffered losses and/or Defendants Hogue and Thompson obtained profits that rightfully belong to the ESOP and its participants. Accordingly, the ESOP participants who are members of the Class correspondingly suffered losses to their individual accounts.

## COUNT IV
### Breach of Duty to Monitor Pursuant to
### ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B)
### Against the Director Defendants

108.    Plaintiffs incorporate and re-allege by reference each of the foregoing paragraphs as if fully set forth herein.

109.    Pursuant to Section 1.5 of the 2013 Plan Document, the recitals of the Trust Document, and Section 6.2 of the Trust Document, the Board of Directors of Technical Associates appointed the Trustees and had the power to remove them. Pursuant to that authority, the Director Defendants had a duty to monitor the Trustees' conduct (i.e. Urbach, and later

Hogue and Thompson) and to take appropriate action if those fiduciaries were not adequately protecting the interests of the ESOP participants, including removing the Trustees and/or correcting any breaches.

110.    The Director Defendants had knowledge of the terms of the 2011 Refinancing because they participated in and/or had access to the terms of the 2011 Refinancing, and because any reasonable system for monitoring the Trustees would have revealed that Defendants Hogue and Thompson had obtained Technical Associates stock in connection with the 2011 Refinancing.  To the extent that the Director Defendants did not actually know of the facts regarding prohibited transactions by Defendants Hogue and Thompson, the Director Defendants either did not conduct a proper review of the Trustees' performance or had a deficient system of monitoring the Trustee's actions at regular intervals.

111.    The Director Defendants knew or, if they had properly exercised their duty to monitor pursuant to prudent monitoring procedures in place, would have known that Defendants Hogue and Thompson engaged in prohibited transactions and caused the ESOP to engage in prohibited transactions in violation of ERISA as set forth in Count I and Count II

112.    The Director Defendants nonetheless took no steps to protect Plan participants or otherwise remedy the violations.

113.    By failing to properly monitor and/or take appropriate action against Defendants Hogue and Thompson, the Director Defendants breached their fiduciary duties under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B).

### ENTITLEMENT TO RELIEF

114.    By virtue of the violations set forth in the foregoing paragraphs, Plaintiffs and the Class are entitled to sue each of the Defendants pursuant to ERISA § 502(a)(2), 29 U.S.C. §

1132(a)(2), for relief on behalf of the Plan as provided in ERISA § 409, 29 U.S.C. § 1109, including for recovery of any losses to the Plan, the recovery of any profits resulting from the breaches of fiduciary duty, and such other equitable or remedial relief as the Court may deem appropriate.

115.    By virtue of the violations set forth in the foregoing paragraphs, Plaintiffs and the Class are entitled pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to sue each of the Defendants for any appropriate equitable relief to redress the wrongs described above.

**PRAYER FOR RELIEF**

Wherefore Plaintiffs, on behalf of themselves and the Class, pray that judgment be entered against Defendants on all claims, and request that the Court order or award the following relief:

A.    Declare any transaction that constitutes a prohibited transaction void and (1) require Defendants Hogue and Thompson (or any other fiduciary or party-in-interest engaging in these transactions) to disgorge any profits made as a result of such transaction; (2) declare a constructive trust over the proceeds of any such transaction; or (3) order any other appropriate equitable relief, whatever is in the best interest of the Plan.

B.    Require that the proceeds of any recovery for the ESOP be allocated to the accounts of participants in the Plan, other than the Defendants and other individuals excluded from the Class.

C.    Order the removal of Defendants from their positions as fiduciaries of the Technical Associates ESOP and enjoin them from acting as fiduciaries for any employee benefit plan that covers or includes any Technical Associates employees or any members of the Class.

34

D.     Appoint an Independent Fiduciary to manage the Technical Associates ESOP to be paid for by Defendants.

E.     Order pursuant to ERISA § 206(d)(4) that any amount to be paid to the ESOP accounts of the Class members can be satisfied by using or transferring any breaching fiduciary's ESOP account (or the proceeds of that account) to the extent of that fiduciary's liability.

F.     Require Defendants to pay attorneys' fees and the costs of this action pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), or order the payment of reasonable fees and expenses to Plaintiffs' Counsel on the basis of the common benefit or common fund doctrine (or other applicable law) out of any money or benefit recovered for the Class in this action.

G.     Award pre-judgment and post-judgment interest.

H.     Award any other such relief the Court determines Plaintiffs and the Class are entitled to pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or otherwise.

Dated:  April 19, 2019                          Respectfully submitted


                                                */s/ Nina Wasow*
                                                Daniel Feinberg *(admitted pro hac vice)*
                                                Nina Wasow *(admitted pro hac vice)*
                                                FEINBERG, JACKSON, WORTHMAN &
                                                WASOW LLP
                                                2030 Addison St., Ste. 500
                                                Berkeley, CA 94704
                                                Tel: (510)  269-7998
                                                Email: dan@feinbergjackson.com
                                                Email: nina@feinbergjackson.com

                                                William S. Stone
                                                STONE LAW GROUP TRIAL LAWYERS,
                                                LLC
                                                P.O. Drawer 70
                                                Blakely, GA 39823
                                                Tel: (229) 723-3045
                                                Email: billstone@stonelaw.com

                                                R. Joseph Barton *(admitted pro hac vice)*
                                                Colin M. Downes *(admitted pro hac vice)*
                                                BLOCK & LEVITON LLP
                                                1735 20th St., N.W.
                                                Washington, D.C. 20009
                                                Tel: (202) 734-7046
                                                Email: jbarton@blockesq.com
                                                Email: colin@blockesq.com

                                                *Attorneys for Plaintiffs*