**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | |
|---|---|
| NELSON GAMACHE AND EDWARD NOFI, individually and on behalf of a class of all others similarly situated, | Case No. 1:19-cv-00021-LAG |
| *Plaintiffs*, | |
| v. | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| JOHN F. HOGUE, JR., et al., | |
| *Defendants* | |

## TABLE OF CONTENTS

Introduction ........................................................................................................... 1

Statement of Facts ................................................................................................. 2

Argument ............................................................................................................... 3

    I.      Defendants Hogue and Thompson engaged in a prohibited transaction in violation of ERISA § 406(b)(3). .............................................................. 3

          A.      Hogue and Thompson were fiduciaries of the Plan at the time of the 2011 Refinance. ..................................................................... 5

          B.      The 2011 Refinance was "a transaction" under ERISA § 406(b) because its various steps were all part of an integrated whole. ............... 10

          C.      The 2011 Refinance was a transaction involving Plan assets in which Technical Associates dealt with the Plan and Hogue and Thompson received consideration from Technical Associates for their personal account. ................................................................................... 13

          D.      Plaintiffs are entitled to partial summary judgment on the elements of their ERISA § 406(b)(3) claim and the lack of exemption without resolving Defendants' other affirmative defenses ................................... 15

    II.     Defendants Hogue and Thompson's ERISA § 408(b)(3) exemption defense fails as a matter of law as to Plaintiffs' ERISA § 406(b)(3) claim. ..................... 16

          A.      Exemptions under ERISA § 408(b) do not apply to ERISA § 406(b) Claims. ................................................................................ 16

          B.      The DOL has confirmed by regulation that § 408(b)(3) does not apply to § 406(b)(3) transactions. ............................................. 17

    III.    All Defendants' "affirmative defenses" other than their exemption and statute of repose defenses fail as a matter of law because they are not affirmative defenses. .......................................................................... 18

Conclusion ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Big Star Div. of the Grand Union Co.*,
893 F.2d 288 (11th Cir. 1989) ...................................................... 5

*Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*,
713 F.2d 618 (11th Cir. 1983) ...................................................... 11

*BPI Sports, LLC v. ThermoLife Int'l, LLC*,
19-CV-60505, 2021 WL 966011 (S.D. Fla. Mar. 5, 2021) ...................................................... 19

*Chao v. Clarion Res. Commc'n Corp.*,
No. 1:04-CV-2934-RWS, 2005 WL 8154967 (N.D. Ga. Sept. 29, 2005) ................................ 7

*Chesemore v. All. Holdings, Inc.*,
886 F.Supp.2d 1007 (W.D. Wis. 2012) ...................................................... 11

*Cox v. Stone Ridge at Vinings, LLC*,
1:12-CV-02633-AT, 2012 WL 12931994 (N.D. Ga. Oct. 23, 2012) ...................................................... 19

*Dairy Fresh Corp. v. Poole*,
108 F.Supp.2d 1344 (S.D. Ala. 2000) ...................................................... 4

*Donovan v. Cunningham*,
716 F.2d 1455, (5th Cir. 1983) ...................................................... 3, 4

*Donovan v. Mercer*,
747 F.2d 304 (5th Cir. 1984) ...................................................... 7

*F.D.I.C. v. Stovall*,
No. 2:14-CV-00029, 2014 WL 8251465 (N.D. Ga. Oct. 2, 2014) .......................................... 20

*Fisher v. Ciba Specialty Chem. Corp.*,
CIV.A. 03-0566WS-B, 2007 WL 2995525 (S.D. Ala. Oct. 11, 2007) ...................................... 19

*Gamache v. Hogue*,
446 F.Supp.3d 1315 (M.D. Ga. 2020) ...................................................... 13, 19, 20

*Gamino v. KPC Healthcare Holdings, Inc.*,
No. 5:20-CV-01126-SB-MRW, 2021 WL 5104382 (C.D. Cal. Nov. 1, 2021) ........................ 9

*Gilliam v. Edwards*,
492 F.Supp. 1255 (D.N.J. 1980) ...................................................... 17

*Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*,
  751 F.3d 740 (6th Cir. 2014)........................................................................ 17

*Hurtado v. Rainbow Disposal Co.*,
  No. 8:17-cv-01605-JLS-DFM, 2018 WL 3372752 (C.D. Cal. July 9, 2018) ........................... 9

*In re Rawson Food Serv., Inc.*,
  846 F.2d 1343 (11th Cir.1988)....................................................................... 18

*In re Sprint Corp. ERISA Litig.*,
  388 F.Supp.2d 1207 (D. Kan. 2004) .................................................................... 6

*Kantner v. Sears and Roebuck, Inc*,
  5:15-CV-01039, 2016 WL 739187 (E.D. Pa. Feb. 25, 2016) ............................................ 19

*Lowen v. Tower Asset Mgmt., Inc.*,
  829 F.2d 1209 (2d Cir. 1987)......................................................................... 4

*Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*,
  186 F.Supp.3d 1370 (N.D. Ga. 2016) ................................................................. 19

*Lysengen v. Argent Tr. Co.*,
  498 F.Supp.3d 1011 (C.D. Ill. 2020).................................................................. 17

*Martin v. Schwab*,
  No. CIV.A.91-5059-CVSW-1, 1992 WL 296531 (W.D. Mo. Aug. 11, 1992).................................. 5

*Marx v. Gen. Revenue Corp.*,
  568 U.S. 371 (2013).................................................................................. 9

*Owens v. Metro. Life Ins. Co.*,
  210 F.Supp.3d 1344 (N.D. Ga. 2016) ............................................................... 4, 7

*Patelco Credit Union v. Sahni*,
  262 F.3d 897 (9th Cir. 2001)........................................................................ 17

*Solis v. Botes*,
  No. 1:08-CV-03668-WSD, 2011 WL 13269163 (N.D. Ga. June 28, 2011)..................................... 7

*Spear v. Fenkell*,
  No. CV 13-2391, 2016 WL 5661720 (E.D. Pa. Sept. 30, 2016)........................................... 11

*Union P. R.R. Co. v. City of Palestine*,
  517 F.Supp.3d 609 (E.D. Tex. 2021) ................................................................. 19

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996).................................................................................. 9

*Woods v. S. Co.*,
  396 F.Supp.2d 1351 (N.D. Ga. 2005) ................................................................. 5, 6, 7

*Zivkovic v. S. Cal. Edison Co.*,
  302 F.3d 1080 (9th Cir. 2002) ................................................................................. 18

**Statutes**

29 U.S.C. § 1135 ............................................................................................................. 17

ERISA § 406, 29 U.S.C. § 1106 ........................................................................ 8, 14, 16

ERISA § 408, 29 U.S.C. § 1108 ............................................................................ 16, 17

**Other Authorities**

29 C.F.R. § 2509.75-8 ................................................................................................. 5, 6

29 C.F.R. § 2550.408 ..................................................................................................... 18

Ga. Code § 14-2-861 ..................................................................................................... 14

Ga. Code § 14-2-863 ..................................................................................................... 14

**Index of Exhibits**

**Exhibit A:**   Transcript of the Deposition of Technical Associates of Georgia, Inc. by its Rule 30(b)(6) designee, taken September 23, 2021, at Atlanta, Georgia.

**Index of Previously Filed Exhibits**

**ECF No. 44**:          Defendants' Answer to Plaintiffs' Amended Complaint.

**ECF No. 142-4**:       Technical Associates of Georgia, Inc. Employee Stock Ownership Plan

Document effective as of August 22, 2011.

**ECF No. 142-30**:      Written Consent of the Board of Technical Associates of Georgia, Inc.

bearing Bates number 00008.

**ECF No. 142-35**:      Presentation to the Trustee of the Technical Associates of Georgia Inc.

Employee Stock Ownership Plan and Trust, presentation prepared by

Willamette Management Associates and dated August 16, 2011.

**ECF No. 142-44**:      Consent Resolution of Shareholder of Technical Associates of Georgia,

Inc. dated August 22, 2011 and bearing Bates number

JURISDISCO_00001988.

**ECF No. 142-46**:      ESOP Loan and Pledge Agreement.

**ECF No. 142-47**:      Collateral Assignment of ESOP Loan Documents dated August 22, 2011.

**ECF No. 142-48**:      Hogue Employment Agreement.

**ECF No. 142-49**:      Thompson Employment Agreement.

**ECF No. 142-50**:      Loan Agreement dated August 22, 2011.

**ECF No. 142-51**:       Email from John Hogue dated August 16, 2011 and bearing Bates number

12280 TAG 9.28.

**ECF No. 142-60**:      Technical Associates of Georgia Employee Stock Ownership Form 5500

for the plan year beginning January 1, 2011, and ending December 31,

2011.

**ECF No. 145-1**:     Transcript of the Deposition of John F. Hogue, Jr. taken on September 1, 2021.

**ECF No. 146-1**:     Transcript of the Deposition of Graham Thompson taken on August 11, 2021.

**ECF No. 149-1**:     Transcript of the Deposition of Randolph Smith taken on August 23, 2021.

**ECF No. 150-1**:     Transcript of the Deposition of Michael McGinley taken on September 22, 2021.

**ECF No. 155-4**:     Defendants' Amended Responses to Plaintiff's First Set of Requests for Admission dated September 20, 2021.

**ECF No. 155-5**:     Combined Technical Associates of Georgia, Inc. Employee Stock Ownership Plan Administrative Committee Meeting and Decisions for the years 2007–2020 produced in this litigation by Defendants and bearing Bates numbers 0004341-54.

**ECF No. 155-6**:     Annual Return/Report of Employee Benefit Plan (Form 5500) for the Technical Associates of Georgia Employee Stock Ownership Plan for the 2010 Plan Year, produced in this litigation by Plaintiffs and bearing Bates number PLAINTIFFS_000047.

**ECF No. 155-7**:     Annual Return/Report of Employee Benefit Plan (Form 5500) for the Technical Associates of Georgia Employee Stock Ownership Plan for the 2011 Plan Year, produced in this litigation by Plaintiffs and bearing Bates number PLAINTIFFS_000074.

**ECF Nos. 155-9, 155-10, 155-11, 155-12**:

Consent Action of Shareholder of Technical Associates of Georgia, Inc.

dated August 22, 2011, produced by Defendants in this litigation and bearing Bates number JURISDISCO_00001345.

**ECF No. 155-13**: Email from John Hogue to Chris Deisley dated March 16, 2011, produced by Technical Associates in this litigation and bearing Bates number 05508 TAG 9.28.

**ECF No. 155-14**: Email from John Hogue to Glenn Kirbo dated March 28, 2011, produced by Technical Associates in this litigation and bearing Bates number 05690 TAG 9.28.

**ECF No. 155-15**: Defendants' Response to Plaintiffs' Second Set of Interrogatories dated September 11, 2020.

**ECF No. 176-3**: Email correspondence from Randolph R. Smith, Jr. to James H. Moore, III dated June 28, 2011, produced in this litigation by Moore Clark DuVall & Rodgers P.C. bearing Bates number 009047 MCDR 4.20.2022.

**ECF No. 176-4**: Email correspondence from Randolph R. Smith, Jr. to James H. Moore, III dated August 17, 2011, produced in this litigation by Moore Clark DuVall & Rodgers P.C. bearing Bates number 010007 MCDR 4.20.2022.

## INTRODUCTION

Defendants Hogue and Thompson secretly obtained hundreds of thousands of dollars in cash as well as stock and options that resulted in them acquiring an approximately 40% ownership interest in Technical Associates of Georgia, Inc. ("Technical Associates" or the "Company") through a 2011 transaction in which both Technical Associates and the employee stock ownership plan it sponsors (the "ESOP" or "Plan") refinanced their respective debts (the "2011 Refinance"). On this motion, Plaintiffs seek partial summary judgment as to the elements of their ERISA § 406(b)(3) claim in Count I of the Amended Complaint. ERISA § 406(b) prohibits transactions by which fiduciaries receive consideration for their personal account through transactions involving plan assets. Hogue and Thompson undisputedly had fiduciary roles with respect to the ESOP: Hogue and Thompson were members of the board of directors of Technical Associates, and in that role, both appointed and monitored the trustees of the Plan and exercised discretionary authority as plan administrator of the ESOP. There are no material factual disputes regarding the terms of the 2011 Refinance: it was a single, unified transaction by which stock held by the ESOP was used as security for a new loan for Technical Associates and through which Hogue and Thompson received generous awards of cash, stock, and options. And while Defendants have asserted as an affirmative defense that the 2011 Refinance was exempt under ERISA § 408(b)(3), that defense fails as a matter of law as to this claim, because that exemption does not apply to ERISA § 406(b)(3).

Additionally, Plaintiffs move for summary judgment on 38 of Defendants' 40 affirmative defenses. While Defendants have asserted forty separate purportedly affirmative defenses to Plaintiffs' claims, only two of them are affirmative defenses: Defendants' statute of repose and exemption defenses. Thus, Plaintiffs seek summary judgment as to the remaining 38 defenses, each of which is either a negative defense or not a defense at all.

## STATEMENT OF FACTS

Technical Associates is an engineering design and services company headquartered in Albany, Georgia. SMF ¶ 46. In 2006, its founders and then-owners, Randy Wages and Steve Harrison, sold 100% of the outstanding common stock of Technical Associates to the ESOP in exchange for $1.5 million in cash and notes in the amount of $16 million. ECF No. 44 ("Answ.") at ¶ 40.

As of 2011, Defendants John F. Hogue, Jr. and Graham Thompson were officers of Technical Associates and members of its board of directors. SMF ¶¶ 2-3. Technical Associates was the plan administrator of the ESOP under the terms of the Plan document adopted in 2006, and the duties of the Plan Administrator were exercised by the Board. *Id*. ¶¶ 1, 18. Hogue and Thompson, as members of the Board and of the administrative committee of the ESOP, approved the annual appraisal of Technical Associates stock upon which the benefits of participants were based, approved the annual Form 5500 filing with the U.S. Department of Labor, maintained bank accounts and a safe deposit box for holding Plan assets, and ratified the actions of the Trustee. *Id*. ¶¶ 6-14, 19. As members of the Board, Hogue and Thompson also had the authority to appoint and remove the Trustee of the ESOP. *Id*. ¶ 4. They exercised this authority on June 22, 2011, appointing James Urbach as Trustee to "represent the ESOP" with regards to certain "contemplated transactions": the "refinancing of debt associated with the prior acquisition of common stock of the Company, as well as the contemplated restructuring of Company executive compensation," that is, the 2011 Refinance. Id. ¶¶ 20-21.

The 2011 Refinance closed on August 22, 2011. Id. ¶¶ 30, 37. Technical Associates took out a loan from Atlantic Capital Bank and used part of the proceeds to pay off the ESOP's debt to the Company's former owners. *Id*. ¶ 47. In exchange, the former owners assigned that debt to Technical Associates, which entered into a new ESOP Loan and Security Agreement with the

ESOP (represented by Urbach as Trustee) by which the ESOP pledged its unallocated shares of ESOP stock to Technical Associates as security. *Id*. ¶ 37. Technical Associates in turn pledged its interests in those unallocated shares of ESOP stock to Atlantic Capital Bank as security for its own refinanced loan arrangements. *Id*. ¶ 32. As a condition of the refinancing, Atlantic Capital Bank also required Defendants Hogue and Thompson to give personal guarantees of the Company's debt. *Id*.¶ 31. And as a condition of giving their personal guarantees, Hogue and Thompson demanded and received substantially increased executive compensation. *Id*. ¶ 33. They received not only an award of $335,037 in cash and 6,665 shares of Technical Associates stock each as, nominally, consideration for the guarantee, but also a $164,000 increase in base salary as well as stock options and stock purchase rights amounting to a further 17,482 shares each. *Id*. ¶¶ 34, 38-42.



## ARGUMENT

## I.   Defendants Hogue and Thompson engaged in a prohibited transaction in violation of ERISA § 406(b)(3).

ERISA's "prohibited transaction rules are an important part of Congress's effort to tailor traditional judge-made trust law to fit the activities of fiduciaries functioning in the special context of employee benefit plans." *Donovan v. Cunningham*, 716 F.2d 1455, 1464–65 (5th Cir. 1983). "The object of Section 406 was to make illegal per se the types of transactions that

experience had shown to entail a high potential for abuse...." *Id.* Courts have held this provision should be "broadly construed in light of ERISA's statutory scheme, which evidences Congress' concern with protecting plan beneficiaries.... Liability may 'be imposed where there is no taint of scandal, no hint of self-dealing, no trace of bad faith.'" *Owens v. Metro. Life Ins. Co.*, 210 F.Supp.3d 1344, 1356 (N.D. Ga. 2016) (granting summary judgment to plaintiff on 406(b) claim) (quoting *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987)); *Dairy Fresh Corp. v. Poole*, 108 F.Supp.2d 1344, 1360 (S.D. Ala. 2000) (same). A bright-line rule broadly construed in favor of participants "protects beneficiaries by prohibiting transactions tainted by a conflict of interest" but also "gives notice to fiduciaries that they must either avoid the transactions described in Section 406(b) or cease serving in their capacity as fiduciaries, no matter how sincerely they may believe that such transactions will benefit the plan." *Lowen*, 829 F.2d at 1213; *Donovan*, 716 F.2d at 1465.

Count I alleges that Hogue and Thompson engaged in a prohibited transaction in violation of both ERISA § 406(b)(1) and 406(b)(3). Am. Compl. ¶¶ 80-86. Plaintiffs seek summary judgment only as to ERISA § 406(b)(3), which prohibits a fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3). The undisputed facts establish that Defendants Hogue and Thompson were fiduciaries of the ESOP at the time of the 2011 Refinance; that the 2011 Refinance involved the assets of the Plan; that as part of the 2011 Refinance, Technical Associates dealt with the Plan; and that Hogue and Thompson received consideration for their personal accounts from Technical Associates.

### A.   Hogue and Thompson were fiduciaries of the Plan at the time of the 2011 Refinance.

Defendants Hogue and Thompson were both fiduciaries of the Plan on August 22, 2011, and thus were both subject to the prohibitions of ERISA § 406(b) when the 2011 Refinance was negotiated and when it closed. Some offices or positions, such as plan administrator or trustee of a plan, "must by the very nature of [the] position, have 'discretionary authority or discretionary responsibility in the administration of the plan.... Persons who hold such positions will therefore be fiduciaries.'" *Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288, 290 n.2 (11th Cir. 1989) (quoting 29 C.F.R. § 2509.75-8 at D-3 (1988)).

First, both Hogue and Thompson were members of the Board of Directors of Technical Associates, SMF ¶¶ 2–3. The Board had the power to appoint and remove the Trustee, Plan Administrator, and the Administrative Committee of the Plan. *Id.* ¶¶ 4, 5, 22. The authority to appoint and remove the fiduciaries of a benefit plan makes one a fiduciary. *Martin v. Schwab*, No. CIV.A.91-5059-CVSW-1, 1992 WL 296531, at *4 (W.D. Mo. Aug. 11, 1992); *see Woods v. S. Co.*, 396 F.Supp.2d 1351, 1372 (N.D. Ga. 2005) ("A person with discretionary authority to appoint, maintain and remove plan fiduciaries is himself deemed a fiduciary with respect to the exercise of that authority."). In *Martin*, the court granted summary judgement for the plaintiff on the issue of certain defendants' fiduciary status. *Martin*, 1992 WL 296531, at *2, 4. The court held that the defendants were fiduciaries because they were members of the board of directors of the plan sponsor, which had the authority to appoint the plan administrator, even though the directors had never exercised that authority. *Id.* at *4. In addition to possessing fiduciary authority and duties, Hogue and Thompson actually exercised their appointing authority as recently as two months before the 2011 Refinance, when they voted as members of the Board to appoint Defendant James Urbach to replace Defendant Glenn Kirbo as Trustee for purposes of

the 2011 Refinance. SMF ¶ 20, 21. Because they had appointment and removal authority with respect to the Trustee, Defendants Hogue and Thompson had the fiduciary duty to monitor Urbach's conduct as Trustee in the 2011 Refinance. "Implicit in the fiduciary duties attaching to persons empowered to appoint and remove plan fiduciaries is the duty to monitor appointees." *Woods*, 396 F.Supp.2d at 1371 (quoting *In re Sprint Corp. ERISA Litig.*, 388 F.Supp.2d 1207, 1231 (D. Kan. 2004)). Thus, Hogue and Thompson had an ongoing fiduciary obligation to monitor Urbach's conduct and were fiduciaries at the time of the 2011 Refinance.

Technical Associates was also the plan administrator of the Plan, with duties and powers including directing the Trustee regarding payment of benefits, furnishing participants with disclosures, and determining the fair market value of Company stock. SMF ¶¶ 1, 23-25. The Board, including Hogue and Thompson, exercised this authority by administering the Plan on behalf of Technical Associates. *Id.*¶¶ 18-19. The minutes of the meetings and decisions of the Administrative Committee of the Plan during this period set forth the agreements and resolutions of the Board. *Id.* ¶ 19. These minutes show that each year from 2006 to 2011, Hogue and Thompson (along with Defendant Kirbo) hired accountants, approved the appraisal of Technical Associates stock for the year, approved the annual Form 5500 filing for the prior year, authorized a bank account and safe deposit box for holding Plan assets, and ratified all the actions of the Trustee during the year to date. *Id.* at ¶¶ 6-14. Graham Thompson personally signed the Plan's Form 5500 filings for 2010 and 2011 (submitted annually to the United States Department of Labor, under oath) on behalf of the Plan Administrator. *Id.* ¶¶ 15,16. All of these actions evidence exercise of discretionary authority over the Plan and its assets, and as persons with such discretionary authority Hogue and Thompson were thus fiduciaries. 29 C.F.R. § 2509.75-8 at D-3 ("[A] plan administrator or a trustee of a plan must, by the very nature of his position, have

'discretionary authority or discretionary responsibility in the administration' of the plan within the meaning of section 3(21)(A)(iii) of the Act."); *Solis v. Botes*, No. 1:08-CV-03668-WSD, 2011 WL 13269163, at *3 (N.D. Ga. June 28, 2011) (holding on summary judgment that plan administrator was ERISA fiduciary); *Chao v. Clarion Res. Commc'n Corp.*, No. 1:04-CV-2934-RWS, 2005 WL 8154967, at *2 (N.D. Ga. Sept. 29, 2005) (holding on summary judgement that corporate officer who exercised administrative responsibilities of plan administrator on its behalf was ERISA fiduciary); *see Owens*, 210 F.Supp.3d at 1350, 1356 (holding "fiduciary administration includes performing duties imposed or exercising powers conferred by trust documents" and granting summary judgment on ERISA § 406(b) claim).

The Fifth Circuit held that a defendant with no formal title, but who took on the responsibilities of trustee and plan administrator was a fiduciary under ERISA. *Donovan v. Mercer,* 747 F.2d 304, 309 (5th Cir. 1984) (rejecting argument that defendant was merely acting as an agent for her husband, a designated fiduciary). Thus, Hogue and Thompson were undisputedly fiduciaries of the ESOP at the time of the 2011 Refinance. Similarly, in *Woods*, the board of the sponsor had authority to appoint fiduciaries under the plan, and defendants sought dismissal of a duty to monitor claim against the sponsor on the basis that it was the board rather than the sponsor that had the fiduciary obligation to monitor fiduciaries. 396 F.Supp. at 1373. The court denied the motion, after explaining that there was no "support for the proposition that a meaningful distinction can be drawn between a 'corporation' and the directors through whom it must act." *Id*. While the posture here is inverted—the Plan bestowed plan administration authority on Technical Associates, which was exercised by its Board—the same legal principle applies. Defendant Hogue himself testified as the Rule 30(b)(6) representative of Technical

Associates that it was through the Board that the Company acted in its capacity as Plan Administrator. SMF ¶¶ 18, 19.

This status imposed an obligation on them to either avoid the transactions prohibited by ERISA § 406(b) or exit their positions as fiduciaries. Defendants have argued that Hogue and Thompson were not fiduciaries at the time of the 2011 Refinance because they "abstained from voting on all the transactions at issue," which "vitiate that any breach of fiduciary duty or prohibited violation under ERISA occurred." ECF No. 102 at 11. This is wrong: the statutory text of ERISA § 406(b) prohibited Hogue and Thompson from engaging in certain transactions regardless of whether they acted in the transaction in a fiduciary capacity.

ERISA prohibits three categories of transactions involving "a fiduciary." The first encompasses those circumstances where a fiduciary "deal[s] with plan assets in his own interest or for his own account," which contemplates that the fiduciary is acting in his individual capacity rather than on behalf of the Plan. ERISA § 406(b)(1). 29 U.S.C. § 1106(b)(1). The second prohibits a fiduciary from acting "in his individual… capacity," or "on behalf of a party… whose interests are adverse to the interests of the plan" in any transaction. ERISA § 406(b)(2). 29 U.S.C. § 1106(b)(2). This expressly contemplates liability for a fiduciary acting in his individual capacity (or on behalf of a party adverse to the plan) as *opposed* to his fiduciary capacity. And the third category (at issue here) requires *no action at all*: liability arises merely from the receipt of compensation by a fiduciary for his "own personal account" from a party dealing with a plan in connection with a transaction involving plan assets. ERISA § 406(b)(3). 29 U.S.C. § 1106(b)(3). Unlike ERISA § 406(a), which contemplates and prohibits the fiduciary from *causing* the plan to engage in specified transactions, ERISA §406(b)(3) "does not have a causal element; it requires only that the fiduciary received consideration from a transaction involving

assets of the plan." *Hurtado v. Rainbow Disposal Co.*, No. 8:17-cv-01605-JLS-DFM, 2018 WL
3372752, at *11 (C.D. Cal. July 9, 2018) (sustaining § 406(b)(3) claim against director of plan
sponsor who was alleged to have received payment for financial advisory services offered in
connection with transaction he did not cause); *see Gamino v. KPC Healthcare Holdings, Inc.*,
No. 5:20-CV-01126-SB-MRW, 2021 WL 5104382, at *4 (C.D. Cal. Nov. 1, 2021) (sustaining
406(b) claim against fiduciary who did not cause ESOP to engage in prohibited transaction but
sat on sponsor's board of directors). Defendants' interpretation would render this distinction
between the text of sections 406(a) and 406(b) surplusage by reading an implied causal element
into 406(b). *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against
surplusage is strongest when an interpretation would render superfluous another part of the same
statutory scheme").

Even if the Court were to adopt Defendants' reading of the statute, the undisputed facts
show that Hogue and Thompson acted as fiduciaries in connection with the 2011 Refinance. By
appointing Urbach to represent the Plan in that transaction and Hogue and Thompson had the
duty to monitor his conduct. SMF ¶ 20-21. Additionally, Hogue and Thompson made disclosures
about the 2011 Refinance to the Department of Labor. *Id*. ¶¶ 16, 48. Thompson signed a
statutorily mandated disclosure on behalf of the Plan Administrator stating that the Plan had not
engaged in any non-exempt transactions with a party-in-interest 2011, thus averring (falsely, *see
infra,* Part II) that the 2011 Refinance was exempt under ERISA's prohibited transaction rules.
SMF ¶ 48. Hogue and Thompson communicated with employees regarding the Refinance's
impact on their ESOP benefits. In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), an employer
communicated with employees about a corporate reorganization and included brief statements
about the future of plan benefits. The Supreme Court held "that making intentional

representations about the future of plan benefits in that context is an act of plan administration," and affirmed the district court's conclusion that the communications had been in a fiduciary capacity. *Id.* at 505. Here, Hogue and Thompson coauthored an email to all Technical Associates employees assuring them that under the 2011 Refinance the "ESOP balance and term will be moved over and the process will continue as it does today," that the goals of the transaction included "freeing up the stock to the participants in an accelerated fashion," and that the "new finance terms" would save "the ESOP a lot of interest dollars during the remaining years." SMF ¶ 45. This was a communication with employees about the security of their benefits and thus a fiduciary act in connection with the 2011 Refinance.

Whether Hogue and Thompson voted to approve the Refinance is not dispositive of their status as fiduciaries. There are factual disputes regarding the degree of control Hogue and Thompson exercised over the Refinance,[1] but the undisputed facts demonstrate that Hogue and Thompson were fiduciaries of the Plan at the time of the Refinance. That is sufficient to trigger liability under ERISA § 406(b)(3).

**B.     The 2011 Refinance was "a transaction" under ERISA § 406(b) because its various steps were all part of an integrated whole.**

The loan from Atlantic Capital Bank to Technical Associates, the personal guaranties of that loan offered by Hogue and Thompson, the award of additional executive compensation to Hogue and Thompson, the loan from Technical Associates to the ESOP, and the concomitant

---

[1] This motion addresses the undisputed facts that Hogue and Thompson were both fiduciaries at the time of the 2011 Refinance. To the extent that action in a fiduciary capacity is an element of ERISA § 406(b)(3) liability, there is at least a material issue of disputed fact that Hogue and Thompson acted as fiduciaries in connection with the 2011 Refinance because Hogue and Thompson continued to exercise comprehensive *de facto* authority and control with respect to the Plan notwithstanding their abstentions from these Board votes. If necessary, Plaintiff will address this on Defendants' motion for summary judgment or at trial.  But resolving that issue is unnecessary for this motion.

pledges of the Plan's unallocated stock—first to Technical Associates, then to Atlantic Capital Bank—were all "'*a transaction*' that is, the entire set of steps and all the parties were united in a single purpose and plan." *Spear v. Fenkell*, No. CV 13-2391, 2016 WL 5661720, at *11 (E.D. Pa. Sept. 30, 2016) (emphasis in original); *see Chesemore v. All. Holdings, Inc.*, 886 F.Supp.2d 1007, 1056 (W.D. Wis. 2012) (declining to "parse the fiction of individual steps" where transaction was negotiated as "an integrated whole to which [defendant] would benefit"), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016). In this litigation, Defendants have at times characterized the 2011 Refinance as consisting of two separate transactions, that is, the bank loan and the additional compensation for Hogue and Thompson. But this litigation position contradicts Defendants' own pleadings, which have conceded that executive compensation including stock grants and options was awarded to Hogue and Thompson "as part of the Refinance." SMF ¶¶ 26, 27; Answ. ¶¶ 48, 49; *see Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) ("[A] party is bound by the admissions in his pleadings."). Regardless, none of the facts regarding various agreements underlying the 2011 Refinance are in dispute: the parties only disagree about whether, as a matter of law, they constituted "a transaction" in the sense of ERISA § 406(b). They did.

In *Fenkell*, the trustee of an ESOP brought breach of fiduciary duty and prohibited transaction claims against fiduciaries of the plan regarding a "complex set of transactions" that included a series of loans intended to capture substantial tax benefits, security arrangements, and stock purchases. *Spear,* 2016 WL 5661720 at *4, *12, *clarified on denial of reconsideration*, No. CV 13-2391, 2016 WL 7475814 (E.D. Pa. Dec. 29, 2016). The court rejected the defendant's effort "to unspool the transaction, as if the half-billion in loan proceeds arrived… by a series of independent market events that serendipitously coalesced into a profitable whole." *Id.* at *11.

11

The court identified multiple facts from the transaction document that made clear the agreements were unified in purpose and plan, including that the "separate 'transactions' took place at once," that each "transaction was dependent on the one before it and the one after it," that "the various steps in the transaction were negotiated as one deal," and that "without the first step… none of the secondary steps made sense." *Id*. Each of these facts is present here.

The loan and security pledge components of the 2011 Refinance closed on August 22, 2011, the same day that Hogue and Thompson executed their new employment agreements with Technical Associates. SMF ¶¶ 28-30. Atlantic Capital Bank explicitly conditioned its extension of credit to Technical Associates on both personal guarantees of the debt by Defendants Hogue and Thompson as well Technical Associates' pledge of its security interest in the unallocated stock of the ESOP. SMF ¶¶ 31-32. The bank loan was thus contingent on the Company's loan to the ESOP and the pledge of a security in the ESOP's unallocated stock to Technical Associates, because without the ESOP loan, Technical Associates would have no security interest in the ESOP's unallocated stock to pledge to the bank. For their part, Defendants Hogue and Thompson conditioned their personal guarantee of the Atlantic Capital Bank loan on receiving additional executive compensation from Technical Associates (and indeed, the new employment agreements Hogue and Thompson entered on the same day as the refinancing expressly characterized $335,037.00 in cash and a grant of 6,665 shares of Company stock as consideration for their personal guarantees). SMF ¶¶ 33-34. Defendant Hogue was explicit: "The bank has told us flat out that there will be no deal without that guarantee and we can also tell you flat out that there will be no personal guarantee, therefore no refinance… without due consideration." ECF No. 155-14 at 1. Randy Smith, counsel to the Trustee, explained that  shortly before closing that Hogue and Thompson would receive in the 2011 Refinance "guarantee fees, stock, etc." only

upon "approval of the bank financing," and recited that Hogue had "commented … that the bank financing can't happen without the comp restructure, which is to his and Graham's benefit." ECF 176-4. Each of the components of the 2011 Refinance were contingent on the other components. The ESOP Trustee's financial and legal advisors agreed and evaluated the agreements holistically in their analysis of the proposed deal. SMF ¶¶ 35-36. Randy Smith and counsel for Technical Associates, James H. Moore III, both understood the 2011 Refinancing to be a single "two-step transaction, with the loan to close first and payoffs to be made, followed immediately by a board meeting at which the new employment agreements and compensation packages can be considered and no doubt approved," rather than two separate transactions. ECF No. 176-3 at 1.

The Court previously concluded the transaction documents did "not contradict Plaintiffs' allegations" that the 2011 Refinance involved the assets of the Plan. *Gamache v. Hogue*, 446 F.Supp.3d 1315, 1325 (M.D. Ga. 2020). The undisputed facts now establish that the various components of the 2011 Refinance were a single transaction.

**C.    The 2011 Refinance was a transaction involving Plan assets in which Technical Associates dealt with the Plan and Hogue and Thompson received consideration from Technical Associates for their personal account.**

The elements of a prohibited transaction with a fiduciary under ERISA 406(b)(3) are that the transaction involves plan assets and the fiduciary receives consideration for their personal account from a party dealing with the plan. This single, unified transaction involved Plan assets. Technical Associates dealt with the Plan as part of it. And in connection with the transaction, Defendants Hogue and Thompson, fiduciaries of the Plan, received consideration for their personal account from Technical Associates. The transaction was thus prohibited under ERISA.

First, the 2011 Refinance involved Plan assets. Defendant Urbach, acting as Trustee, entered a loan agreement with Technical Associates and pledged the Plan's unallocated shares of Company stock—Plan assets—as security for that loan. SMF ¶¶ 37. This was a condition of the

2011 Refinance as a whole, because Atlantic Capital Bank required that Technical Associates pledge *its* security interests in the ESOP's unallocated Company stock as security for the loan the bank then extended to Technical Associates. SMF ¶¶ 32. The 2011 Refinance also involved the assets of the Plan because the Trustee, in his capacity as a shareholder of Technical Associates, gave a written consent pursuant to Ga. Code § 14-2-863 to the loan from Atlantic Capital Bank. SMF ¶ 43. Georgia corporations law provides that a transaction in which a director has a conflicting interest may not be set aside or give rise to an award of damages under state law where a majority of shareholders take action to ratify the transaction. Ga. Code §§ 14-2-861(b)(3), 14-2-863. As part of the 2011 Refinance, the Trustee thus used his control over what was then more than 97% of the ESOP's shares of Technical Associates, SMF ¶ 44, assets of the Plan, to immunize the Board from potential corporate liability arising from that transaction.[2] Second, Technical Associates dealt with the Plan as part of the 2011 Refinance through the ESOP Loan and Security Agreement it entered with the ESOP. SMF ¶ 37. The statute thus prohibited Defendants Hogue and Thompson from receiving any consideration for their personal account from Technical Associates in connection with the 2011 Refinance. ERISA § 406(b)(3).

But Hogue and Thompson received generous awards as part of that transaction, which included: $335,037.00 in cash, an increase in their respective base salaries from $186,000 to $350,000 per year, stock awards in the amount of 6,665 shares of Technical Associates each, options to purchase up to 4,901 shares of Technical Associates each, and a purchase of 12,941 shares of Technical Associates stock each in exchange for notes from Hogue and Thompson.

---

[2] Defendants have argued that Plaintiffs should have brought their claims as derivative shareholder actions under Georgia corporate law in state court. *E.g.*, ECF No. 159 at 19. But the written consent delivered by the Trustee on behalf of the Plan as part of the 2011 Refinance extinguished any such state law claim that Plaintiffs possessed.

SMF ¶¶ 38-42.[3] Defendants have acknowledged that they personally received at least stock grants and stock options "as part of the Refinance." SMF ¶¶ 26, 27; Answ. ¶¶ 48, 49. This was valuable consideration that Hogue and Thompson received for their respective personal accounts.

If Defendants Hogue and Thompson wanted to participate in the 2011 Refinance—through which they received substantial consideration from a party dealing with the Plan—they were required to exit their roles as fiduciaries beforehand. Instead, they remained members of the Board. In so doing, Hogue and Thompson engaged in a prohibited transaction.

**D.     Plaintiffs are entitled to partial summary judgment on the elements of their ERISA § 406(b)(3) claim and the lack of exemption without resolving Defendants' other affirmative defenses**

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment on "part of [a] claim or defense." Fed. R. Civ. P. 56(a). Here, on Count I, Plaintiffs have established they are entitled to summary judgment on the elements of their ERISA § 406(b)(3) claim—just one of their legal theories under that Count. Plaintiffs also seek summary judgment as to Defendants Hogue and Thompson's ERISA § 408(b)(3) exemption defense specifically as to that ERISA § 406(b)(3) claim, *infra* at Part II, and on all of Defendants' other affirmative defenses except their statute of limitations defense. *Infra* at Part III. Should the Court grant Plaintiffs' requested relief, the only issue that will remain for trial on Plaintiffs' ERISA § 406(b)(3) claim will be Defendants' statute of limitations defense to it. In response to Plaintiffs' originally filed Motion for Partial Summary Judgment, ECF No. 155, Defendants argued at length that summary judgment was precluded by Defendants' statute of limitations defense. ECF No. 158 at 3-12. But the statute of limitations defense is irrelevant on this motion, which does not seek summary

---

[3] While characterized as a stock "purchase," Hogue and Thompson never paid anything for these shares – because under the terms of their employment agreements the amounts due on the notes offered as purchase consideration were forgiven by Technical Associates. ECF No. 142-48 § 5; ECF No. 142-49 § 5.

judgment on that defense as to Count I—only the elements of liability of ERISA § 406(b)(3), the exemption defense to that ERISA § 406(b)(3) claim, and all of Defendants' *other* affirmative defenses as to all claims. Likewise irrelevant is any potential liability of Defendants Kirbo or Urbach, *see id*. at 17-18, who are not Defendants as to Count I. The Court should disregard argument regarding the liability of other Defendants under Count I or Hogue and Thompson's statute of limitations defense in opposition to this motion.

## II.      Defendants Hogue and Thompson's ERISA § 408(b)(3) exemption defense fails as a matter of law as to Plaintiffs' ERISA § 406(b)(3) claim.

Defendants' Thirty-Second Defense asserts that "Plaintiffs' claims fail, in whole or in part, because the challenged acts and or transactions are exempt under ERISA § 408, 29 U.S.C. § 1108." Answ. at 7. The only alleged exemption Defendants asserted in verified interrogatory responses is that under ERISA § 408(b)(3). ECF No. 155-15 at No. 9. ERISA § 408(b)(3) concerns transactions involving a "loan to an employee stock ownership plan (as defined in section 1107(d)(6) of this title)" that are subject to certain specified conditions. 29 U.S.C. § 1108(b)(3). But exemptions under § 408 do not apply to ERISA § 406(b) transactions, and the Department of Labor ("DOL") has declined to exempt such transactions under § 408(b)(3). Thus, the Thirty-Second Defense fails as a matter of law as to Plaintiffs' § 406(b) claim under Count I.

### A.      Exemptions under ERISA § 408(b) do not apply to ERISA § 406(b) Claims.

Exemptions under ERISA § 408 generally do not apply to prohibited transactions under ERISA § 406(b). There are two broad categories of prohibited transactions under ERISA: those involving parties in interest, which are addressed by ERISA § 406(a), and those involving fiduciaries, which are addressed by § 406(b). These provisions differ in several regards. ERISA § 406(a) proscribes fiduciaries from causing the plan to engage in certain transactions but only with "a party in interest." 29 U.S.C. § 1106(a). ERISA § 406 limits liability under § 406(a) by

prefacing it with the qualification "[e]xcept as provided in section 1108 of this title." *Id*.

§ 1106(a). This is a reference to ERISA § 408, which sets out a range of prohibited transaction

exemptions. But ERISA § 406(b), which prohibits a fiduciary from engaging in various forms of

self-dealing, does not impose the same caveat or reference § 408 at all. *See id*. § 1106(b).

 Based on this textual difference, the majority of courts have held that § 408 exemptions

do not apply to § 406(b) transactions. *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*,

751 F.3d 740, 750 (6th Cir. 2014) (citing cases that "have held that [29 U.S.C.] § 1108 applies

only to transactions under § 1106(a), not § 1106(b)" and declining to apply certain ERISA

§ 408(b) exemptions to a § 406(b)(1) claim); *Patelco Credit Union v. Sahni*, 262 F.3d 897, 910-

11 (9th Cir. 2001) (holding that the exemption under § 408 for "reasonable compensation does

not apply to fiduciary self-dealing"); *Lysengen v. Argent Tr. Co*., 498 F.Supp.3d 1011, 1022

(C.D. Ill. 2020) ( "the majority of courts that have examined this statutory interpretation issue

have held that § 1108 applies only to transactions under § 1106(a), not § 1106(b)"). This is

consistent with Congress's purpose to create "a blanket prohibition of certain acts, easily applied,

in order to facilitate" its "remedial interest in protecting employee benefit plans." *Patelco*, 262

F.3d at 911 (quoting *Gilliam v. Edwards*, 492 F.Supp. 1255, 1263 (D.N.J. 1980)).

 **B.** **The DOL has confirmed by regulation that § 408(b)(3) does not apply to § 406(b)(3) transactions.**

In addition to allowing certain exemptions to § 406(a) by statute, ERISA delegates to the

Secretary of the DOL the broad authority to "prescribe such regulations as he finds necessary or

appropriate to carry out the provisions of" Title I of ERISA. 29 U.S.C. § 1135. This includes the

authority to "grant a conditional or unconditional exemption of any fiduciary or transaction, or

class of fiduciaries or transactions, from all or part of the restrictions imposed by sections 1106

and 1107(a) of this title [i.e., ERISA §§ 406 and 407(a)]." 29 U.S.C. § 1108(a). The DOL has

specifically stated through notice and comment rulemaking that § 408(b)(3) does not exempt § 406(b)(3) transactions. Pursuant to its authority under ERISA § 408, the DOL promulgated a regulation entitled "Loans to Employee Stock Ownership Plans" to define the scope of ERISA § 408(b)(3). *See* 29 C.F.R. § 2550.408b-3. The regulation provides that while "Section 408(b)(3) of the Act provides an exemption from the prohibited transaction provisions of sections 406(a) and 406(b)(1) of the Act . . . and 406(b)(2) of the Act . . . . *Section 408(b)(3) does not provide an exemption from the prohibitions of section 406(b)(3) of the Act*." 29 C.F.R. § 2550.408b-3(b)(1) (emphasis added). By 29 C.F.R. § 2550.408b-3, the DOL exercised its authority to exempt ERISA §§ 406(a), 406(b)(1) and 406(b)(2) transactions under § 408(b)(3) but declined to do so for § 406(b)(3) transactions—and confirmed that § 408(b)(3) does not apply to § 406(b)(3) transactions. Because ERISA § 408 exemptions generally do not apply to § 406(b) transactions and the DOL has declined to exempt them under § 408(b)(3), Defendants' Thirty-Second Defense under ERISA § 408(b)(3) fails as to Plaintiffs' ERISA § 406(b)(3) claim.

**III.    All Defendants' "affirmative defenses" other than their exemption and statute of repose defenses fail as a matter of law because they are not affirmative defenses.**

An affirmative defense "raises matters extraneous to the plaintiff's prima facie case" that can defeat a claim. *In re Rawson Food Serv., Inc*., 846 F.2d 1343, 1349 (11th Cir. 1988) (quotation omitted). The party asserting an affirmative defense bears the burden of proving it. *Id*. However, a "defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." *Id.* Likewise, a "defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." *Zivkovic v. S. Cal. Edison Co*., 302 F.3d 1080, 1088 (9th Cir. 2002) (citing *In re Rawson Food Serv., Inc*., 846 F.2d at 1349)). Summary judgment on such "affirmative defenses" is proper and does not bar consideration of those arguments at trial in their proper posture—as denials. *Fisher v. Ciba Specialty Chem. Corp*.,

CIV.A. 03-0566WS-B, 2007 WL 2995525, at *21 (S.D. Ala. Oct. 11, 2007) (granting summary judgment as to defense which was "element of plaintiffs' claims").

Defendants' Fifth Defense asserts that "[s]tate law, not ERISA, governs Plaintiffs' claims of corporate malfeasance and breach of fiduciary duty." Answ. at 8. *But see Gamache*, 446 F.Supp.3d at 1324  (holding that the Court has subject matter jurisdiction). But, "Lack of subject matter jurisdiction may be raised at any time, and consequently, it is not an affirmative defense." *BPI Sports, LLC v. ThermoLife Int'l, LLC*, 19-CV-60505, 2021 WL 966011, at *4 (S.D. Fla. Mar. 5, 2021); *Union P. R.R. Co. v. City of Palestine*, 517 F.Supp.3d 609, 634 (E.D. Tex. 2021).

Defendants' Thirty-Ninth Defense asserts that "Defendants reserve the right to assert or rely upon any and all additional defenses that may be determined during discovery and litigation of this case." Answ. at 8. But "Under the plain language of Rule 8, a claim or defense is either asserted or it is not." *Kantner v. Sears and Roebuck, Inc*, 5:15-CV-01039, 2016 WL 739187, at *2 (E.D. Pa. Feb. 25, 2016). A defendant "may not reserve its right to amend its pleading its pleading and must instead petition the court for leave to amend." *Cox v. Stone Ridge at Vinings, LLC*, 1:12-CV-02633-AT, 2012 WL 12931994, at *4 (N.D. Ga. Oct. 23, 2012); *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 186 F.Supp.3d 1370, 1381 (N.D. Ga. 2016) (striking reserved defenses). Because it is not an affirmative defense, Defendants' Thirty-Ninth Defense fails.

Defendants' remaining defenses other than the above-discussed defenses and the exemption and statute of repose defenses (*i.e.*, the Seventh and Thirty-Second Affirmative Defenses) challenge Plaintiffs' prima facie case and do not raise extraneous matters. "A defense predicated on a plaintiff's inability to prove the elements of its claim is not an affirmative defense." *Fisher*, 2007 WL 2995525, at *20; *see F.D.I.C. v. Stovall*, No. 2:14-CV-00029, 2014

19

WL 8251465, at *2 (N.D. Ga. Oct. 2, 2014) (holding that the defense "that defendants did not owe plaintiff a duty does not raise an affirmative defense").

Certain defenses challenge purported elements of Count I for prohibited transaction under ERISA §§ 406(b)(1) and (3) (Am. Compl. ¶¶ 80-86) and thus are not affirmative defenses. *See* Answ. at 2-3 (Defendants' Second, Eleventh, Twelfth, and Thirteenth defenses). Others challenge elements of Count II for prohibited transaction under § 406(a)(1)(d). *See* Answ. at 1-7 (Defendants' First, Second, Third, Fifteenth, Sixteenth, Seventeenth, Eighteenth, Twenty-Ninth, Thirty-First, and Thirty-Fifth Defenses). Still others challenge elements of Count III for breach of fiduciary duties under § 404(a). *See* Answ. at 2-8 (Defendants' Fourth, Sixth, Eighth, Fourteenth, Nineteenth, Twentieth, Twenty First, Twenty-Second, Twenty-Fourth, Thirtieth, Thirty-Third, Thirty-Fourth, Thirty-Sixth, and Thirty-Seventh Defense).

Defendants' Tenth Defense (the continuing duty to monitor does not apply to "discrete prohibited transactions") and Twenty-Third Defense (Count IV fails because it is "impermissibly duplicative" of Count I) challenge elements of Count IV for breach of the duty to monitor (Am. Comp. ¶¶ 108-13) and thus are not affirmative defenses. *See* Answ. at 3, 5. They have also already been rejected by the Court. ECF No. 130 at 2; *Gamache*, 446 F.Supp.3d at 1330, 1328.

Last, Defendants' Ninth, Twenty-Fifth, Twenty-Sixth, Twenty-Seventh, and Twenty-Eighth Defenses challenge Plaintiffs' contention that Defendants affirmatively concealed their breaches and violations. *Id*. at 3, 5-6; *see* FAC ¶¶ 61-73. The Thirty-Eighth Defense challenges Plaintiffs' claim for attorneys' fees. Answ. At 5-6. The Fortieth Defense simply denies any allegations in the Complaint "that have not been specifically answered." Answ. At 8. These defenses are not affirmative defenses and fail as a matter of law.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted.

Dated:  September 30, 2022                    Respectfully submitted,

_____

Colin M. Downes *(pro hac vice)*
R. Joseph Barton *(pro hac vice)*
BLOCK & LEVITON LLP
1633 Connecticut Ave. NW Ste. 200
Washington, DC 20009
Tel: (202) 734-7046
Email: jbarton@blockleviton.com
Email: colin@blockleviton.com

Daniel Feinberg *(pro hac vice)*
Nina Wasow *(pro hac vice)*
FEINBERG, JACKSON, WORTHMAN &
WASOW LLP
2030 Addison St., Ste. 500
Berkeley, CA 94704
Tel: (510) 269-7998
Email: dan@feinbergjackson.com
Email: nina@feinbergjackson.com

William S. Stone
STONE LAW GROUP TRIAL LAWYERS, LLC
P.O. Drawer 70
Blakely, GA 39823
Tel: (229) 723-3045
Email: billstone@stonelaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on September 30, 2022, I caused the foregoing Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment to be electronically filed with the Clerk of the Court using the CM/ECF system.

Colin M. Downes (*pro hac vice*)
BLOCK & LEVITON LLP
1633 Connecticut Ave. NW Ste. 200
Washington, DC 20009
Tel: (202) 734-7046
Email: colin@blockleviton.com