IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

NELSON GAMACHE et. al,

                                   CASE NUMBER:  1:19-CV-00021-LAG

      Plaintiffs,

v.

JOHN F. HOGUE, JR., et. al,

      Defendants.

_____/

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

      NOW COME Defendants and, pursuant to M.D. Ga. LR 56, submit this reply brief in support of their Motion for Summary Judgment (the "MSJ").[1]

## I.      INTRODUCTION

      Plaintiffs apparently subscribe to the notion that if a lie is repeated often enough, eventually it will be believed. The truth is that Defendants took no affirmative steps to conceal Hogue's and Thompson's ownership of stock outside the ESOP. The truth is that not one person testified that any of Defendants misled them or misrepresented that the ESOP owned 100% of TA. The truth is that not one person testified that Defendants overheard anyone making such misstatement and failed to correct it.  The truth is that not one document contains a false statement of fact.  At best, Plaintiffs have shown that some participants were unaware of the ESOP's equity dilution until 2016 or later, did not know what Thompson meant when he allegedly said "bank juggling" in

---

[1] Contrary to Plaintiffs' claim in footnote 1 of their brief, the arguments advanced in the MSJ comport with Defendants' position throughout this litigation. (*Compare* ECF 195-1 *with* ECF 22-1, 36-1, 44, 56, 142-1, 159, 174, 198.) Simply because Defendants streamlined their arguments in the MSJ does not mean that they abandoned any prior legal theory. In contrast, each time during the course of this litigation that Defendants have demonstrated how the evidence refutes their claims, Plaintiffs have pivoted to a different legal argument.

4860-0722-3616.1

2014, and/or did not understand a diagram that Thompson drew on a whiteboard when he voluntarily described his and Hogue's ownership of stock outside the ESOP.   None of this evidence, even accepting it as true for the purposes of the MSJ, constitutes   affirmative concealment as a matter of law.

It is undisputed that, in 2011, Hogue and Thompson obtained additional equity in TA with the full knowledge and vote of the Board of Directors ("BOD") and with the consent of the ESOP Trustee who, as the record shows, was involved in over eight months of negotiations between the BOD and Hogue and Thompson. It is also undisputed that Plaintiffs waited until 2019 to file this suit.  Therefore, Plaintiffs' prohibited transaction claims in Counts I and II are barred by ERISA § 413(1)(A)'s six-year repose period.

Plaintiffs' self-characterized "derivative" claims in Counts III and IV that admittedly rest on the same purported facts and harms alleged in Counts I and II are likewise time-barred under ERISA § 413(1)(A). Plaintiffs intentionally ignore that the Supreme Court recently affirmed that derivative claims are subject to the same limitations period as their underlying claims. *See Sulyma v. Intel Corp. Inv. Policy Comm.*, 909 F.3d 1069, 1078 (9th Cir. 2018) (rejecting that limitations period for participant's derivative claims began to run only upon the end-point of the limitations period on his primary claims), *aff'd*, 140 S. Ct. 768 (2020).  As the statute of repose expired on the underlying claims, it also expired on the derivative claims.

Plaintiffs inadvertently defeat their reliance on *Tibble v. Edison Int'l*, 575 U.S. 523 (2015). Plaintiffs' contention that August 2014 marked the "end point" of their failure-to-monitor claims vitiates that such claims rested on duties that were continuing in nature.

Plaintiffs cannot save their "monitoring" claims by restyling them as "failure-to-sue" (*i.e.,* "omission") claims under ERISA § 413(1)(B).  To prevail, Plaintiffs must show that Defendants

had actual knowledge of an underlying violation <u>and</u> that ERISA required them to "cure" that alleged violation. Plaintiffs offer no proof that Defendants knew of any violation much less that any such violation occurred.  Plaintiffs may not stack inference upon inference to create a question of fact otherwise. *See, generally, Granela v. Wal-Mart Stores E., L.P.*, 2021 U.S. Dist. LEXIS 36925, \*9 (S.D. Fla. Feb. 26, 2021) (party may not stack multiple inferences); *U.S. v. Bushay*, 859 F. Supp. 2d 1335, 1363 (N.D. Ga. 2012) (same).

 In short, Plaintiffs' opposition to summary judgment rests on legal misconceptions and supposition rather than on any genuine issue of material fact. Once the standard is properly set, summary judgment follows.

## II.   ARGUMENT

### A.  Plaintiffs Do Not Refute that All of Their Claims Are Untimely.

As to the untimeliness of their claims, Plaintiffs try to create an issue of fact where none exists.  Plaintiffs may not stack multiple inferences to show otherwise.

### 1.   Plaintiffs Do Not Refute That Their Claims in Counts I and II Are Time-Barred.

Plaintiffs do not dispute that their claims in Counts I and II are time-barred unless they can show that the affirmative concealment exception in ERISA § 413(1)(A) applies.  Plaintiffs also do not dispute that several participants testified or averred that Hogue and Thompson revealed their ownership in the Company outside the ESOP commencing late 2011. This uncontradicted testimony alone vitiates the applicability of the fraud and concealment exception, as it is paradoxical (and factually impossible) to conceal and reveal the same matter at the same time.

Importantly, Plaintiffs do not point to any false statement made by Defendants, as none exists. For example, informing participants by e-mail that TA secured a loan to refinance the 2006 Seller Loan to the ESOP at a lower interest rate was and remains a true statement. Similarly,

Thompson's statements on the Form 5500s  -- that the ESOP "purchased all of the outstanding stock of the Company from its two former shareholders" and that no prohibited transaction occurred in 2011 --  were and still remain completely true.

Plaintiffs disingenuously cite to portions of the deposition transcript and declaration of Kristi Coates that do not support their factual contentions.  Indeed, Ms. Coates expressly testified that Hogue and Thompson never told her that the ESOP owned 100% of TA. (*See* ECF 201-14, p. 66:11-13.)  Ms. Coates also expressly testified that neither Hogue nor Thompson ever instructed her to tell prospective employees that the ESOP owned 100% of TA, and that she never told Hogue or Thompson that she was making such statements to recruits. (*Id.*, pp. 92:18-25 – 93:1-2, 97:7-10.)  Ms. Coates testified that she formed an "impression" that the ESOP owned 100% of TA based on conversations she had with other unnamed recruiters and written materials correctly describing TA as employee owned. (*Id.*, pp. 55:10-25 – 56:1-3, 58:4-8, 59: 1-11; 90:1-5; 95:13-17; ECF 166-5, ¶¶ 3, 5-7.)[2]  Ms. Coates's sworn statements preclude an inference that her mistaken impression was based on anything that Defendants had stated.  In any event, and as a matter of law, failure to warn an ERISA participant "of any misconception regarding their benefits are not 'affirmative steps,' and cannot on their own bring the 'fraud or concealment' exception into play." *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006).

Finding no evidence of affirmative wrongdoing, Plaintiffs' counsel comb the record to find instances in which Defendants failed to volunteer information or say something in a particular document. But, as a matter of law, affirmative concealment may not be inferred from mere silence or failure to volunteer information. There must be some affirmative trick or contrivance intended

---

[2] That TA, since 2006, has been wholly owned by employees is a correct statement of fact.  (ECF 195-2, ¶ 81; 201-14, p. 95:13-17.) Plaintiffs do not contend otherwise.

4860-0722-3616.1

to conceal the facts, *Turner v. Allstate Ins. Co.,* 491 F. Supp. 3d 1190, 1213 (M.D. Ala. 2020); *Griffin v. Aetna Health Inc.,* 2017 U.S. Dist. LEXIS 200879, *14 (N.D. Ga. June 21, 2017); and silence alone does not constitute such affirmative conduct. *Lockhart v. S. Health Plan, Inc*., 2012 U.S. Dist. LEXIS 63265, *17 (M.D. Ga. May 4, 2012), *aff'd* 503 Fed. Appx. 926 (11th Cir. Jan. 17, 2013).

*Wagner v. Stiefel Labs., Inc.*, 2015 U.S. Dist. LEXIS 81464 (N.D. Ga. Jun 18, 2015), upon which Plaintiffs rely, does not hold otherwise. In *Wagner*, the district court found a question of fact as to whether failure to disclose the company's impending merger rose to the level of affirmative concealment, where such information rendered prior communications to the participant "concerning the true worth of his stock and the management's plans about the future of the Company" no longer accurate. *Id.* at *58-59. "Although ordinarily ERISA fiduciaries, just like corporate directors, have no duty to disclose merger discussions," the district court held, "when those fiduciaries send communications to shareholders *reporting the price of the stock while knowing that the price is probably inaccurate*, such merger discussions constitute material information that must be disclosed." *Id.* at *44 (quoting *Bacon v. Stiefel Labs., Inc*., 714 F. Supp. 2d 1186, 1191 (S.D. Fla. 2010) (emphasis added)).

Notwithstanding that it is factually inapposite, *Wagner* merely supports the proposition that an ERISA fiduciary has a duty to volunteer nonpublic information to correct a statement made to a participant that they know is (or since has become) false or misleading. *See, generally, Jones v. Am. Gen. Life & Accident Ins. Co.,* 370 F.3d 1065, 1072 (11th Cir. 2004). As noted above, Defendants never made any false or misleading statement.

Try as they might, Plaintiffs cannot equate the statement in the Form 5500s regarding the amount of stock the ESOP acquired in 2006 with a statement of the ESOP's ownership interest in

2011 or later.  Notably, there is no place on the Form 5500 for the plan administrator to describe the ownership structure of the company, as that is not its purpose.  (*See* Form 5500s, at ECF Nos. 142-60, 166-9, 166-10, 166-11.) This makes sense given that, as Plaintiffs acknowledge, the Form 5500 is used to report information on the qualification of a retirement plan (such as an ESOP), its financial condition, and investments and operations.

Plaintiffs' contention, that "the Form 5500s are the only source of public information about the TA ESOP" (Opp. Brief, p. 5), is belied by Thompson's affirmative disclosure of the amount of stock he and Hogue received outside the ESOP to multiple participants and in other <u>public</u> filings as early as 2011. (ECF 195-2, ¶¶ 75-76; ECF 195-55; ECF 195-56.) Consequently, Thompson's directive to Gamache in 2016 to examine the Form 5500s is not evidence of anything. Plaintiffs lack standing to argue otherwise.[3]

Similarly,  that Thompson, in answering a question from a participant at some point after 2013, purportedly attributed a supposed decline in stock value to "bank juggling" also evidences nothing.[4] Plaintiffs intentionally mischaracterize that testimony to argue the participant mistakenly inferred from Thompson's alleged use of the term "bank juggling" that the ESOP continued to own 100% of TA stock.  <u>There was no such testimony</u>.[5] Nor may this Court infer an intent to mislead given that the participant expressly testified that: (1) at no time did Hogue or Thompson

---

[3] Tellingly, Plaintiffs do not address Defendants' challenge to their lack of standing. (*See* MSJ, p. 5 & n. 2.)

[4] The Form 5500s vitiate the participant's testimony that the ESOP's stock declined in value at any point from August 22, 2011 through 2014, *i.e.,* when these alleged discussions purportedly took place. (*See* ECF 36-14, p. 40; ECF 166-9, p. 34; ECF 166-10, p. 31; ECF 166-11, p. 40; ECF 195-42, p. 48.)

[5] Notably, the account of that witness is directly contradicted by multiple other participants who never heard Thompson refer to the term bank juggling and understood that Thompson's diagram showed that he and Hogue received additional stock outside the ESOP in August 2011. (*E.g.,* ECF 201-3, p. 86:21-24; ECF 201-4, p. 56:14-21; ECF 201-6, pp. 15-17, 85:10-25 – 86:1-18, 87:8-22; ECF 201-7, p. 23:14-25; ECF 201-11, p. 36:18-25.)

4860-0722-3616.1

conceal their stock ownership outside the ESOP to him; and (2) at a meeting in or after 2014, Thompson drew a diagram on a whiteboard to discuss the new ownership structure of TA. (ECF 201-15, pp. 56:11-22, 58:7-13.) That the participant may not have understood the diagram is not tantamount to affirmative concealment.

Plaintiffs' alternative suggestion of a self-concealing act is simply baseless. (Opp. Brief, p. 8 n.7.)  In arguing otherwise, Plaintiffs misplace reliance on *Martin v. Consultants & Adm'rs*, 966 F.2d 1078 (7th Cir. 1992), which is factually inapposite. In that case, the Seventh Circuit held that the self-concealing nature of the fraudulent transfer of plan assets was evident where fiduciaries "channel[ed] the kickbacks through a dummy corporation" and "falsely labeled" those kickbacks "as payments for services supposedly rendered in checking members' eligibility." *Id.* at 1094.  No evidence of the kind exists here.[6]  As there was no self-concealing action, *Martin* is factually and legally inapposite.[7]

That the 2006 ESOP Purchase Transaction documents, <u>on their face</u>, unambiguously revealed the potential for future dilution of the ESOP's equity in TA further vitiates Plaintiffs' ability to show concealment. (*See* ECF 195-2, SMF ¶¶ 13-16.)  Plaintiffs do not contend they ever

---

[6] That the BOD's attorney, in May 2018, purportedly refused to let Plaintiffs inspect certain records pertaining to the 2011 Bank Refinance is legally irrelevant because the six-year repose period had already expired by that time.

[7] None of the other cases cited by Plaintiffs even addressed the fraud or concealment exception to ERISA § 413(1) and, as such, are legally irrelevant. *See Sec. & Exch. Comm'n v. Conrad,* 354 F. Supp. 3d 1330, 1342 (N.D. Ga. 2019); *Bacon v. Stiefel Labs., Inc*., 714 F. Supp. 2d 1186 (S.D. Fla. 2010); *Pension and Emp. Stock Ownership Plan Admin. Comm. of Cmty. Bancshares, Inc. v. Patterson*, 547 F. Supp. 2d 1230 (N.D. Ala. 2008); *Tapken v. Brown*, 1992 U.S. Dist. LEXIS 11744 (S.D. Fla. Mar. 13, 1992).

4860-0722-3616.1

requested or reviewed the 2006 ESOP Purchase Documents even though they acknowledge that Georgia law authorized them to do so.  (*See* Opp. Brief, p. 7 (citing O.C.G.A. § 14-2-1602).)[8]

Simply put, nothing in the record shows that Defendants affirmatively concealed, or harbored an intent to conceal, the dilution in the ESOP's equity in TA. To infer otherwise would require this Court to "make impermissible inferential leaps and assumptions" through the improper stacking of multiple inferences. *Granela*, 2021 U.S. Dist. LEXIS 36925, at *9.

In short, Plaintiffs do not refute that their claims in Counts I and II are time-barred.  The fact that this Court "previously held that Plaintiffs pled with particularity affirmative acts of concealment" is immaterial. To defeat the MSJ, actual evidence -- not mere allegations -- of intent to conceal is required. *Accord* Fed. R. Civ. P. 56.  No such evidence exists. Summary judgment on these claims should be entered for Defendants.

### 2.  Plaintiffs Also Do Not Refute That Their Claims in Counts III and IV Are Time-Barred.

Plaintiffs concede that their claims in Counts III and IV, which they acknowledge are "derivative" in nature, rest on the same underlying facts and harms alleged in Counts I and II. (Opp. Brief, pp. 12 n. 11, 13.) Because derivative claims cannot stand alone, *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1286 n.20 (11th Cir. 2012), as a matter of law, they do not extend the time for filing suit. *Accord Sulyma*, 909 F.3d at 1078. Consequently, the six-year repose period on Plaintiffs' claims in Counts III and IV expired at the same time as it did for their claims in Counts I and II, *i.e.,* August 2017.

---

[8] That Plaintiffs rely on Georgia law underscores that none of their claims is governed by ERISA. *See Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1016 (11th Cir. 2003) (allegations that corporate officers breached their fiduciary duty by not disclosing to ESOP participant merger discussions between employer and another company "does not implicate the traditional ERISA roles, nor does it call into question the administration of the ESOP").

4860-0722-3616.1

In arguing otherwise, Plaintiffs conflate derivative claims, which are subject to ERISA § 413(1)(A), with actionable omissions subject to ERISA § 413(1)(B). To invoke ERISA § 413(1)(B), actionable omissions must be based on duties which are continuing in nature, as was the case in *Tibble v. Edison Int'l*, 575 U.S. 523, 528-30 (2015), or must constitute an independent breach of fiduciary duty, as was the case in *Martin, supra*. Failure to act in these situations commences a new repose period ERISA § 413(1)(B). *Accord Tibble*, 575 U.S. at 529-30; *Martin*, 966 F.2d at 1089.

Plaintiffs' contention, that "Defendants could have cured the alleged violations in Counts I and II by bringing an ERISA action themselves, by August 22, 2014" under ERISA § 413(2) (Opp. Brief, p. 10), vitiates that the alleged duties at issue in Counts III and IV were continuing in nature. Thus, *Tibble* is inapposite. *Cf. Tibble*, 575 U.S. at 530 ("a fiduciary *normally* has a continuing duty of some kind to monitor investments and remove imprudent ones"). Indeed, while trust law recognizes a continuing duty to monitor plan service providers or plan investments, *id.*, it does not recognize a continuing duty to investigate an alleged prohibited transaction. *Accord Carolina Electrical Workers Ret. Plan v. Zenith Am. Solutions, Inc.*, 658 Fed. Appx. 966, 972-73 (11th Cir. Sept. 1, 2016).

The cases cited in the MSJ bolster this conclusion. The alleged prohibited transaction here (*i.e.,* the stock award to Hogue and Thompson) was a discrete event that concluded on August 22,

2011. ERISA, therefore, did not impose on any of Defendants a continuing duty to remedy that transaction.[9] None of the cases cited by Plaintiffs supports otherwise.[10]

In any event, the record forecloses Plaintiffs' contention that, under ERISA § 413(2), Plan fiduciaries had three years (*i.e.,* until August 22, 2014) to investigate the award of additional stock to Hogue and Thompson. (Opp. Brief, p. 10.) As a matter of law, for ERISA § 413(2) to have triggered any purported duty to investigate this transaction, Plan fiduciaries must have had actual knowledge that it violated ERISA. *Accord Sulyma*, 140 S. Ct. at 777 ("To meet §1113(2)'s 'actual knowledge' requirement, however, the plaintiff must in fact have become aware of that information."). Plaintiffs have presented no evidence that any of Defendants ever had actual knowledge of any breach of fiduciary duty by any of them. Without actual knowledge of such a breach, Defendants cannot be held liable for failing to take steps to "reclaim" the stock granted to Hogue and Thompson. *Accord Sulyma*, 140 S. Ct. at 778-79.[11]

---

[9] *E.g., Carolinas Elec. Workers Ret. Plan,* 658 Fed. Appx. at 972; *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1068 n. 8 (M.D. Tenn. 2018); *Hugler v. Sherrod,* 246 F. Supp. 3d 1224, 1230-31 (N.D. Ill. 2017).

[10] *Cf. Woods v. S. Co.*, 396 F. Supp. 2d 1351 (N.D. Ga. 2005) (no allegation that the monitoring claim rested on discrete transaction or was time-barred); *Perez v. Bruister*, 54 F. Supp. 3d 629 (S.D. Miss. 2014) (no allegation that monitoring claims were time-barred); *Spano v. The Boeing Co.*, 125 F. Supp. 3d 848 (S.D. Ill. 2014) (monitoring claim did not rest on discrete transaction).

[11] Contrary to Plaintiffs' contention (Opp. Brief, p. 29 n. 15), <u>nothing</u> in *Sulyma* stands for the proposition that constructive knowledge of alleged wrongdoing gives rise to a duty to investigate under ERISA §§ 404 and 405. In fact, *Sulyma* holds to the contrary. *See* 140 S. Ct. at 776 ("The addition of 'actual' in §1113(2) signals that the plaintiff 's knowledge must be more than 'potential, possible, virtual, conceivable, theoretical, hypothetical, or nominal.'") (citation omitted). Even Plaintiffs' own case, *Harris v. Koenig*, 602 F. Supp. 2d 39 (D.D.C. 2009), held that actual -- not constructive -- knowledge triggers a duty to act. *See id.* at 55 ("<u>*Once State Street learned* that Plan fiduciaries had caused the Plan to acquire Old Waste stock at inflated prices</u> and were trying to obtain a release of all the Plan's claims against them without payment of any consideration, *State Street had a duty to investigate* whether there was any merit to the Plan's potential ERISA claims.") (emphasis supplied).

4860-0722-3616.1

The absence of this evidence distinguishes the instant case from *Martin*.  Indeed, in *Martin,* the DOL, in May 1987, sued former trustees, who had participated in a series of kickbacks, for failing to take action (*i.e.,* for failing to sue themselves) to recover the kickbacks. 966 F.2d at 1082-83. The defendant trustees, who had been criminally indicted for the kickback scheme in June 1981, challenged the DOL's suit as untimely under ERISA § 413(2). *Id.* at 1083.  The Seventh Circuit disagreed and held that June 1984 -- three years after the criminal indictment -- marked "the end-point of the statute of limitations on the" trustee's alleged duty to sue themselves and, consequently, marked "the start of the limitations period on" the DOL's failure-to-sue claim. *Id.* at 1089.  In doing so, the *Martin* court necessarily held that the trustees acquired actual knowledge that the kickback scheme was illegal *only when they were criminally indicted.  Id.*

Unlike the trustees in *Martin,* Defendants here did not engage in a prohibited transaction. But even if they had, nothing in the record raises an inference that any of Defendants, unlike the trustees in *Martin,* had <u>actual</u> knowledge that the transaction allegedly was prohibited. As a matter of law, mere knowledge of the facts underlying the transaction itself was legally insufficient to have triggered any duty to act. *See Sulyma*, 140 S. Ct. at 777 (if party "is not aware of a fact, he does not have 'actual knowledge' of that fact however close at hand the fact might be") (citing 29 U.S.C. §1113(2)).

Contrary to Plaintiffs' contention, neither *Martin* nor any other case allows a plaintiff to avoid ERISA's time bar by recasting their original breach of fiduciary duty claim as a claim against the same defendants for failure to sue themselves or any participating fiduciary.  Nor has any case since *Martin* recognized on summary judgment that Plaintiffs may bring a failure to sue claim against the same fiduciaries who allegedly participated in the underlying breach as Plaintiffs

purport to do in this matter.[12] In fact, the only court since *Martin* which directly addressed this issue on summary judgment rejected it outright. *See Tassinare v. Am. Nat'l Ins. Co.*, 32 F.3d 220 (6th Cir. 1994).[13]

In *Tassinare*, the defendant fiduciaries were the alleged wrongdoers regarding the purported underlying breach. *Id.* at 222-24. The plaintiff tried to circumvent the time bar under ERISA § 413 by suing the defendants for their failure to sue themselves. *Id.* at 223-24. The Sixth Circuit rejected plaintiffs' "failure to sue" claim because:

> the crux of a failure to sue is the mismanagement of litigation spearheaded by the fiduciary. But in this case, there was never any prospect of litigation between the employer and the plan fiduciary, because according to the agents, the directors performed both of these functions. As directors of the company, the defendants were at all times fully capable--if so inclined--of making the requested payments, which renders totally illusory any prospect of legal action brought by the directors to enforce the matching promise. Therefore, we conclude that any harm suffered by the agents was caused by the directors' deliberate refusal to make matching payments, not by the directors' failure to sue themselves.

*Id.* at 224.

*Tassinare* is on point. To apply *Martin* to the distinguishable facts in this case would judicially eliminate the three-year statute of limitations from ERISA for every purported fiduciary alleged to have breached a duty regarding the transaction. Extending *Martin* also would allow a plaintiff to manipulate the statute of limitations by suing such a fiduciary after the three-year statute passed on the underlying principal claim for a "failure to sue," thereby extending the fiduciary's

---

[12] *Hurtado v. Rainbow Disposal Co.*, 2018 U.S. Dist. LEXIS 118128 (C.D. Cal. July 9, 2018) and *Blankenship v. Chamberlain,* 695 F. Supp. 2d 966 (E.D. Mo. 2010), which followed *Martin* and are cited by Plaintiffs, were decided at the motion to dismiss phase under a different standard of review than applies to the MSJ. Also, the district court's docket shows that plaintiffs in *Blankenship* subsequently dismissed their failure-to-sue claim. *See* Case No. 08-CV-01168 (E.D. Mo. Mar. 29, 2011), at Dkt Nos. 36 (¶¶ 50, 52c, 53) and 77.

[13] Footnote 3 in the Sixth Circuit's opinion (32 F.3d at 223 n. 3) and Docket No. 34 in the district court (Case No. 2:92-cv-72107-BAF (E.D. Mich. Feb. 19, 1993)) clarify that *Tassinare* was decided on summary judgment, not on a motion to dismiss.

4860-0722-3616.1

liability an additional three years. *Accord Librizzi v. Children's Mem. Med. Ctr.*, 134 F.3d 1302, 1307 (7th Cir. 1998). That *Librizzi* was decided <u>after</u> *Martin* by the <u>same court</u> bolsters that *Martin* does not apply here. *See also BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 503 (S.D.N.Y. 2013) (rejecting that ERISA required fiduciary to sue itself or to assign those claims on behalf of their beneficiaries).[14]

Furthermore, *Martin* has no application where, as here, Defendants did not have a duty to sue. Even Plaintiffs' own case recognizes that ERISA does not require a fiduciary to take remedial action each time a breach of fiduciary duty or prohibited transaction allegedly occurs. *See McMahon v. McDowell,* 794 F.2d 100, 110 (3d Cir. 1986). In affirming summary judgment to defendants in *McDowell,* the Third Circuit held that participants failed to show that plan fiduciaries acted imprudently by refraining from seeking collection of unpaid pension plan contributions. *Id.* The court reasoned:

> Under traditional trust law doctrine, incorporated into ERISA, if a "trustee holds in trust a contract right against a third person and the trustee improperly refuses to bring an action to enforce the contract, the beneficiaries can maintain a suit . . . against the trustee joining the obligor as co-defendant." 4 A. Scott, *Law of Trusts* § 282.1 at 2339 (3d ed. 1967) (citation omitted). However, if under the circumstances it is prudent to refrain from bringing an action, so that the trustee does not violate his duty in so refraining, the beneficiaries can neither compel him to sue nor can they themselves maintain a suit against the third party. Scott, *supra.* Furthermore, although "a trustee should not without sufficient reason fail to take steps to enforce a claim, yet he can properly abandon a claim where it appears that a suit would be futile . . . and there is no other method of enforcing the claim." 3 Scott § 192 (footnote omitted).

---

[14]Because they "are limited by the case-or-controversy requirement of Art. III to adjudication of actual disputes between adverse parties[,]" *Richardson v. Ramirez*, 418 U.S. 24, 36 (1974); federal courts repeatedly have recognized that, as a general rule, a party may not bring adversarial claims against itself. *E.g., Cruden v. Bank of New York,* 957 F.2d 961, 968 (2d Cir. 1992) ("[I]t would be absurd to require the debenture holders to ask the Trustee to sue itself."); *Boller v. Nat'l Mediation Bd.,* 647 F. Supp. 1060, 1062 (S.D. Tex. 1986) ("TWA cannot sue itself[.]"); *Evmar Oil Corp. v. Getty Oil Co.*, 1978 U.S. Dist. LEXIS 18957, *34 (C.D. Cal. Mar. 17, 1978) ("Getty, obviously, cannot sue itself.").

4860-0722-3616.1

*Id.*

*McDowell* applies with special force here.  The *McDowell* court rejected that fiduciaries breached any duty by failing to remedy the unpaid contributions even though, under the terms of the plan and traditional trust law, the trustee held a contract right to obtain them. Here, nothing in the Plan nor under traditional trust law imbued any of Defendants with a contractual right to reclaim the stock awarded to Hogue and Thompson. *Compare also Henry v. Champlain Enterprises, Inc.*, 288 F. Supp. 2d 202, 227 (N.D.N.Y. 2003) (The duty to ensure that a plan receives all funds to which it is entitled does not require that a "fiduciary has a duty to sue or take action against parties in every circumstance where it is arguably justified.") (citation omitted).

Consequently, the time for Defendants to have "cured" the alleged omissions, which is not a duty imposed by ERISA, expired more than six years before Plaintiffs commenced this suit. Plaintiffs' claims in Counts III and IV are time-barred.

### B.     Plaintiffs Do Not Create a Question of Fact as to Count I.

Plaintiffs do not create a question of fact as to their claims against Hogue and Thompson under ERISA § 406(b).  Unsurprisingly, Plaintiffs fail to address ERISA's regulations, which provide that corporate officers avoid fiduciary status and, hence, liability under ERISA § 406(b) by recusing themselves from any fiduciary decision which potentially implicates a prohibited transaction. 29 C.F.R. §§ 2550.408b-2(e)(1) and (f) (Example 7).  Plaintiffs do not dispute that this is exactly what Hogue and Thompson did.  That Hogue and Thompson recused themselves each time the BOD met with the Trustee, and abstained each time the BOD met to discuss and vote on their compensation and stock award, is fatal to Plaintiffs' ERISA § 406(b) claims.  *See also Wilson v. Perry*, 470 F. Supp. 2d 610, 623 (E.D. Va. 2007) ("[F]iduciaries of a plan and parties with adverse interests [to the plan] may enter into a transaction … if [as here] the fiduciary is recused

from exercising any authority, control, or responsibility in the decision-making process concerning the transaction.") (citation omitted).

Plaintiffs, nevertheless, argue that "ERISA § 406(b) liability is triggered by fiduciary status, not acts." (Opp. Brief, p. 16.) That is, Plaintiffs maintain that the fact Hogue and Thompson, in their capacities as members of the BOD, were fiduciaries for some purposes[15] meant that they were fiduciaries for all purposes under ERISA § 3(21)(A)(iii). However, Plaintiffs' interpretation impermissibly would read out the phrase "to the extent" in ERISA § 3(21)(A). *Accord Varity Corp. v. Howe,* 516 U.S. 489, 528 (2006). "Consistent with the traditional rules of statutory interpretation, the Court must assume that the legislature did not intend to include mere surplusage, and the only way to interpret the statute accordingly is to give the term … some significance[.]" *Brown v. Medscope Am. Corp. & Avantguard Monitoring Ctrs., LLC,* 2022 U.S. Dist. LEXIS 63772, *7 (M.D. Ga. Apr. 6, 2022).

To give meaning to the phrase "to the extent" in ERISA § 3(21)(A)(iii), the Supreme Court held that "[w]hen the employer is not acting as plan administrator, it is not a fiduciary under [ERISA § 3(21)(A)(iii)], and the fiduciary duty of care codified in § 404 is not activated." *Varity Corp.,* 516 U.S. at 528. *Accord Pegram v. Herdrich,* 530 U.S. 211, 226 (2000) (ERISA fiduciaries liable "to the extent" that they were "acting as a fiduciary ... when taking the action subject to complaint"). Plaintiffs do not dispute that, <u>on August 22, 2011,</u> when the alleged prohibited

---

[15] While Hogue and Thompson, as BOD members, had the fiduciary duty to appoint and monitor the Trustee, Plaintiffs are bound by their prior judicial admission that the BOD was never the Plan administrator. (ECF 166-1, ¶¶ 15, 18.) Thus, they may not argue now that the BOD or its members served in that capacity, especially when the Plan forecloses such conclusion. (ECF 195-2, ¶¶ 5, 6.)

transaction took place, Hogue and Thompson were not *acting* as fiduciaries in any capacity. The undisputed facts, thus, foreclose Plaintiffs' claim in Count I.[16]

None of the so-called "specific actions" taken by Hogue and/or Thompson raises an inference of fact regarding fiduciary status. Thompson's "signature on a post-ESOP-Transaction Form 5500 … does not indicate his level of authority or control over Plan management or asset control or disposition at the time he signed [it], much less at the time of the [transactions in August 2011." *Placht v. Argent Tr. Co*., 2022 U.S. Dist. LEXIS 142993, *18 (N.D. Ill. Aug. 10, 2022). Similarly, the August 16, 2011 e-mail sent by Hogue and Thompson, on its face, does not evidence anything. (*See* ECF 198-1 at ¶¶ 10, 11, & Exh. A.)  Nor does it constitute a "communicat[ion] with employees regarding the 2011 Refinance's impact on their ESOP benefits." (*Cf.* Opp. Brief, p. 18.)

Even if this Court could infer from the communication an indirect reference to participants' benefits, the August 16, 2011 e-mail does not permit a second inference that Hogue and Thompson sent the e-mail as an act of Plan administration. Unlike the executives in *Varity Corp.,* who intentionally made false statements to participants about the likely future of their benefits to convince them to continue participating in the plan, nothing in the August 16, 2011 e-mail here equated to "an exercise of a power 'appropriate' to carrying out an important plan purpose." 516 U.S. at 502-03. Thus, the e-mail does not create an issue of fact as to whether Hogue and Thompson acted as fiduciaries with respect to the transactions. This is especially so given that, unlike the statements in *Varity Corp.*, there was nothing untruthful about the statements in the August 16, 2011 e-mail. (ECF 195-2, ¶¶ 71-72, 74.)

---

[16] In arguing otherwise, Plaintiffs misplace reliance on *Bouboulis v. Transp. Workers Union of Am.,* 442 F.3d 55 (2d Cir. 2006) and *Chao v. Wheeler*, 2007 U.S. Dist. LEXIS 87983 (N.D. Ind. Nov. 28, 2007). Because *Bouboulis* pre-dated *Varity,* it is not good law. Likewise, *Chao* is not viable because the district court there relied on *Bouboulis* to reach its holding. *Id.* at *10 and *14.

Contrary to Plaintiffs' false narrative, <u>nothing</u> in the record -- only their counsel's unsupported speculation and innuendo -- supports that Hogue and Thompson, during the eight months that they and their personal attorney negotiated with the BOD for increased compensation and stock, exercised *de facto* control over the BOD and Trustee so as to strip them of all discretion. To make that leap would require this Court to infer, among other things, that: (1) Kirbo and Urbach both schemed with Hogue and Thompson to strip the BOD and Trustee of their discretion; (2) Urbach lacked discretion to consent to the BOD's proposed compensation and stock package to Hogue and Thompson; (3) Urbach feigned his analysis of the overall fairness of the package to the ESOP from a financial standpoint; and (4) Urbach was forced to consent to the BOD's vote to approve the package.  Plaintiffs may not fill the gaping holes in their evidence by stacking multiple inferences to create a question of fact where none exists.

Plaintiffs also may not leverage *Chesemore v. All. Holdings, Inc.,* 948 F.Supp.2d 928 (W.D. Wis. 2013), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016) to argue otherwise.  Plaintiffs' improper stacking of inferences aside, nothing shows or supports that Hogue and Thompson, unlike the defendant in *Chesemore,* "orchestrated" anything. Instead, Hogue and Thompson did what ERISA and its regulations required them to do: recuse themselves from all meetings with the BOD and Trustee where their compensation and stock award were discussed, and to abstain when the two independent members of BOD, Randy Hall and Randy Wages, voted to approve that award.  Unlike the facts in *Chesemore*, no single piece of evidence creates an inference that Hogue and Thompson controlled the Trustee's investigation of the transaction, or the BOD's decision to approve it.

As a matter of law, that Hogue and Thompson threatened to quit TA, and refused to guarantee personally TA's loan with the bank, unless the BOD increased their compensation and

equity does not change this conclusion. "In regard to the allegation of excessive compensation, the Defendants are brought out of the ERISA purview[.]" *Gelles v. Skrotsky*, 983 F. Supp. 1398, 1405 (M.D. Fla. 1997), *aff'd* 189 F.3d 484 (11th Cir. 1999). *Accord Appvion, Inc. v. Buth*, 2022 U.S. Dist. LEXIS 161343, *47 (E.D. Wis. Mar. 17, 2022); *Eckelkamp v. Beste,* 201 F. Supp. 2d 1012, 1023 (E.D. Mo. 2002), *aff'd* 315 F.3d 863 (8th Cir. 2003); *Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 260 (D. Mass. 2008).

None of the cases cited by Plaintiffs supports a contrary conclusion. The defendants in *Owens v. Metro. Life Ins. Co.*, 210 F. Supp. 3d 1344 (N.D. Ga. 2016) and *Lowen v. Tower Asset Mgmt.,* 829 F.2d 1209 (2d Cir. 1987), unlike Hogue and Thompson, were performing fiduciary functions under ERISA § 3(21)(A)(i) during the challenged transactions. *Owens,* 210 F. Supp. at 1350; *Lowen,* 829 F.2d at 1219-20. *Hurtado v. Rainbow Disposal Co.*, 2018 U.S. Dist. LEXIS 118128 (C.D. Cal. July 9, 2018) and *Gamino v. KPC Healthcare Holdings, Inc*., 2021 U.S. Dist. LEXIS 214984 (C.D. Cal. Nov. 1, 2021) were decided on motions to dismiss based on the plaintiffs' factual allegations and not on evidence, as Rule 56 requires. The remaining cases cited by Plaintiffs are similarly inapposite.[17]

---

[17] *Cf. Stanton v. Shearson Lehman/Am. Exp., Inc.,* 631 F. Supp. 100, 103 (N.D. Ga. 1986) (question of fact whether stock broker exercised *de facto* control over plan assets where 99% of the transactions executed in 1982 and at least 90% of the transactions in 1983 were the direct result of her specific recommendations to fiduciary); *Reich v. Compton*, 57 F.3d 270, 287-89 (3d Cir. 1995) (denying summary judgment on ERISA § 406(b)(2) claim where evidence showed plan trustees actively represented the plan and an adverse party in the same transaction); *Metro Sales, Inc. v. Core Consulting Grp., LLC*, 275 F. Supp. 3d 1023, 1042-48 (D. Minn. 2017) (denying plaintiff's summary judgment on their claim that defendant breached ERISA fiduciary duties by acting as attorney, accountant, and expert for company in ESOP transaction); *Fox v. Riverview Realty Partners*, 2013 U.S. Dist. LEXIS 66646, *18-19 (N.D. Ill. May 10, 2013) (denying motion to dismiss, not on summary judgment, where plaintiff alleged facts supporting that "the officer defendants played a rather considerable role in negotiating and facilitating the common share issuance").

4860-0722-3616.1

Finally, that cases cited in the MSJ analyzed fiduciary status under ERISA § 404 and not § 406 makes no legal difference. (*Cf.* Opp. Brief, p. 16.) ERISA § 3(21)(A) governs use of the term "fiduciary" in both statutes. *Accord Varity Corp.*, 516 U.S. at 523 (noting same); *see also Solis v. Hartmann*, 2012 U.S. Dist. LEXIS 124289, *7 (N.D. Ill. Aug. 31, 2012) ("As fiduciaries [under ERISA § 3(21)(A)], Defendants were subject to the general fiduciary provisions of § 404 and the prohibited transaction provisions of § 406.").

In short, Plaintiffs do not dispute that, *at the time the alleged prohibited transaction occurred*, Hogue and Thompson were <u>not acting</u> as ERISA fiduciaries. This Court, therefore, should grant Hogue and Thompson summary judgment on Count I.

### C.    Plaintiffs' Admissions Foreclose Their Claims in Count II.

Plaintiffs do not dispute that ERISA § 408(b)(3) exempted the 2006 Seller Loans to the ESOP from the prohibitions in ERISA § 406(a)(1)(D). (*See also* ECF 166-1, ¶¶ 35, 36 (a) –(e); ECF 201-1, ¶ 16.)  Plaintiffs further do not dispute that TA used the proceeds from the August 2011 bank loan to refinance the 2006 Seller Loans. Likewise, Plaintiffs do not dispute that, as part of this refinance, TA extinguished the ESOP's remaining debt under the 2006 Seller Loans, and entered into a new objectively, commercially reasonable loan agreement with the ESOP that provided a much lower interest rate than the 2006 Seller Loans without recourse against the ESOP. Moreover, Plaintiffs do not dispute that the ESOP's 2011 loan with TA shortened the period over which the ESOP's indebtedness would be repaid. Finally, Plaintiffs do not dispute that Urbach and the BOD met with their respective attorneys and an independent valuation firm to discuss whether refinancing the 2006 Seller Loans in this matter was prudent and fair to the ESOP from a financial point of view.  These undisputed facts show, *as a matter of law*, that the exemption in ERISA § 408(b)(3) applies.  *Accord* 29 C.F.R. § 2550.408b-3(e); DOL Field Assistance Bulletin ("FAB")

2002-1 (Sept. 26, 2002), *available at* www.dol.gov/agencies/ebsa/employers-and-advisers/guidance/field-assistance-bulletins/2002-01.

Plaintiffs, nonetheless, argue that "there are material fact disputes as to whether the 2011 Refinance … was 'primarily for the benefit of participants and beneficiaries of the plan" as ERISA § 408(b)(3) requires. (Opp. Brief, pp. 22-23.)  As a matter of law, however, that refinancing of an ESOP may adversely affect some interests of current participants does not vitiate application of the ERISA § 408(b)(3) exemption. *See Benefits Comm. of Saint-Gobain Corp. v. Key Tr. Co.*, 313 F.3d 919, 928 (6th Cir. 2002) ("**[R]epayment of an exempt loan in a way not legally obligated does <u>not</u> adversely effect the benefits of participants and beneficiaries of the plan.**") (emphasis supplied).  Indeed, whether the refinancing on an ESOP loan is "primarily for the benefit of participants" depends on the <u>structure</u> of the transaction.[18] *Accord* FAB 2002-1. *See, generally, Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (opinions issued by an agency regarding the statute it is charged with enforcing are "entitled to respect" to the extent that they have the "power to persuade").  Plaintiffs do not take issue with the structure of TA's 2011 loan agreement with the ESOP and, therefore, cannot avoid that ERISA § 408(b)(3) bars their claims in Count II. *Cf. also, e.g.,* Priv. Ltr. Rul. 8044074, 1980 PRL LEXIS 4021 (Aug. 11, 1980) (proposed prepayment of ESOP loan with proceeds from sale of unallocated shares that were not held as collateral for the loan was consistent with requirement that transaction primarily benefit participants).

Alternatively, this Court should grant Defendants summary judgment on Count II because Plaintiffs clarify in their Opposition Brief that their claims rest on the August 2011 compensation and stock award to Hogue and Thompson, and <u>not</u> the August 2011 loan agreements at issue.  As

---

[18] As an example, the DOL explained that refinancings which, <u>unlike</u> the ESOP's 2011 loan with TA here, <u>lengthen</u> the period over which ESOP's indebtedness will be repaid violate the "primary benefit" requirement and ERISA's fiduciary standards. FAB 2002-1.

4860-0722-3616.1

a matter of law, "[e]xecutive compensation-related transactions [do] not involve any Plan assets." *Appvion, Inc.*, 2022 U.S. Dist. LEXIS 161343, at *47.  Absent Plan assets, ERISA § 406(a)(1)(D) does not apply.

> **D.      Plaintiffs' Judicial Admissions Foreclose Their Claims against the Committee Defendants and BOD in Counts III and IV, Respectively.**

As discussed above, Plaintiffs clarify in their Opposition Brief that their ERISA §§ 404 and 405 claims in Counts III and IV rest on Defendants' failure to remedy the 2011 transactions. In doing so, Plaintiffs defeat their claims against the Committee Defendants in Count III and the BOD in Count IV.  Their own cases recognize that, to the extent there was a duty to remedy (which there was not), such duty would have belonged <u>only</u> to the Trustee who, as a matter of law, had the "exclusive authority and discretion to manage and control the assets of the plan." 29 U.S.C. § 1103. *Accord Tassinare,* 32 F.3d at 224; *McDowell,* 794 F.2d at 110; *Koenig*, 602 F. Supp. 2d at 55.  Summary judgment, therefore, should be granted to the Committee Defendants on Count III and to the BOD on Count IV.

> **E.      Plaintiffs Do Not Save Their Claims against the Trustees in Count III.**

As discussed above, their failure-to-sue claims in Count III require Plaintiffs to show that the Trustees: (1) actually knew that a prohibited transaction allegedly had taken place; *and* (2) had a duty to remedy such an alleged transaction.  Plaintiffs do not, and cannot, make either evidentiary showing.  Even if they could, Urbach still would be entitled to summary judgment on Count III. Because Urbach resigned in 2012, ERISA § 409(b) forecloses Plaintiffs' claims against him. *See* 29 U.S.C. § 1109(b) ("No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed . . . after he ceased to be a fiduciary."); *accord Beck v. Austin*, 2020 U.S. Dist. LEXIS 138647, *17 (D. Minn. Aug. 4, 2020).

## IV. **CONCLUSION**

Based on the foregoing, this Court should grant summary judgment on all claims in the

Amended Complaint in favor of Defendants.

Dated this 28th day of November, 2022.


LEWIS BRISBOIS BISGAARD
& SMITH, LLP                                    /s/ Joelle C. Sharman
                                                JOELLE C. SHARMAN
600 Peachtree Street, NE                        Ga. Bar No.  637931
Suite 4700
Atlanta, GA  30308                              Counsel for Defendants
404-348-8585 – Telephone
404-467-8845 – Facsimile
joelle.sharman@lewisbrisbois.com


LAW OFFICES OF
   ROBERT E. LESSER, LLC                        /s/ Robert E. Lesser
7200 Highway 278 NE                             Robert E. Lesser
Suite 205                                       Georgia Bar No. 447087
Covington, GA 30014                             Counsel for Defendants
770-385-5111 – Telephone
844-270-3674 – Facsimile
relesser@relesserlegal.com

CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing upon the following

parties to this matter by e-mail addressed to counsel of record through the ECF filing system:

William S. Stone
STONE LAW GROUP TRIAL LAWYERS, LLC
P.O. Drawer 70
Blakely, GA 39823
Tel: (229) 723-3045
Email: billstone@stonelaw.com

R. Joseph Barton (pro hac vice)
Colin M. Downes (pro hac vice)
BLOCK & LEVITON LLP
1735 20th St., N.W.
Washington, D.C. 20009
Tel: (202) 734-7046
Email: jbarton@blockesq.com
Email: colin@blockesq.com

Daniel Feinberg (pro hac vice)
Nina Wasow (pro hac vice)
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison St., Ste. 500
Berkeley, CA 94704
Tel: (510) 269-7998
Email: dan@feinbergjackson.com
Email: nina@feinbergjackson.com

Dated this 28th day of November, 2022.

/s/ Joelle C. Sharman
JOELLE C. SHARMAN
Ga. Bar No.  637931
Lewis Brisbois Bisgaard & Smith, LLP
600 Peachtree Street, NE
Suite 4700
Atlanta, GA  30308
404-348-8585 – Telephone
404-467-8845 – Facsimile
joelle.sharman@lewisbrisbois.com
Attorney for Defendants

/s/ Robert E. Lesser
ROBERT E. LESSER
Ga. Bar No.  447087
LAW OFFICES OF ROBERT E. LESSER, LLC
7200 Highway 278 NE
Suite 205
Covington, GA 30014
770-385-5111 – Telephone
844-270-3674 – Facsimile
relesser@relesserlegal.com
Attorney for Defendants